Karen C. Tumlin*
Nicholas Espíritu*
Nora A. Preciado*
NATIONAL IMMIGRATION LAW
CENTER
3435 Wilshire Boulevard, Suite 1600
Los Angeles, CA 90010
T: (213) 639-3900
*tumlin@nilc.org*
*espiritu@nilc.org*
*preciado@nilc.org*

Daniel R. Ortega, Jr.
Ortega Law Firm, P.C.
361 East Coronado Road
Phoenix, Arizona 85004-1525
T: (602) 386-4455-phone
*danny@ortegalaw.com*

Victor Viramontes*
Julia Gomez*†
MEXICAN AMERICAN LEGAL
DEFENSE AND EDUCATIONAL FUND
634 S. Spring Street, 11th Floor
Los Angeles, CA 90014
T: (213) 629-2512
*vviramontes@maldef.org*
*jgomez@maldef.org*

*\* Application for admission* pro hac vice
*forthcoming*
*† Admitted in New York*

*Additional Co-Counsel on Subsequent
Pages*

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

YUVIANEL OSORIA, LUCRECIA
RIVAS VALENZUELA, MARCOS
GONZALEZ, MARIA DEL CARMEN
CRUZ HERNANDEZ, and GUADALUPE
KARINA NAVA RIVERA,

        Plaintiffs,

  v.

DOUG DUCEY, Governor of the State of
Arizona, in his official capacity; JOHN S.
HALIKOWSKI, Director of the Arizona
Department of Transportation, in his official
capacity; and ERIC JORGENSON, Director
of the Motor Vehicle Division of the Arizona
Department of Transportation, in HIS official
capacity,

        Defendants.

CASE NO.

**COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF**

**CLASS ACTION**

1    *Additional Co-Counsel*

2    Tanya Broder*
     NATIONAL IMMIGRATION LAW
3    CENTER
     2030 Addison Street, Suite 310
4    Berkeley, CA  94704
     T: (510) 663-8282
5    *broder@nilc.org*

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## INTRODUCTION

1.      This lawsuit challenges Arizona's Executive Order 2012-06 (Executive Order)[1] and the Arizona Department of Transportation's (ADOT) Motor Vehicle Division (MVD) Policy 16.1.4,[2] which label individuals with deferred action outside of the Deferred Action for Childhood Arrivals (DACA) program and individuals with Deferred Enforced Departure (DED)[3] as not authorized to be present in the United States.  Defendants deny driver's licenses and identification cards to this class of individuals based on the State's incorrect conclusion regarding federal law.  Under federal law, deferred action holders are authorized to be present in the United States.  Defendants' policy further creates illegal burdens on Plaintiffs and the putative class.

2.      Arizona law allows individuals who can establish "presence in the United States . . . authorized under federal law" to apply for Arizona driver's licenses and identification cards.  Ariz. Rev. Stat. §§ 28-3153(D), 28-3158(C), 28-3165(F) (2016).  Individuals granted deferred action and individuals with DED are eligible for federal employment authorization documents (EADs), which establish that their presence in the United States is authorized by the federal government.  Thus, individuals presenting EADs should be eligible for driver's licenses and identification cards under Arizona law.

3.      This action is brought by Plaintiffs Yuvianel Osoria, Lucrecia Rivas Valenzuela, Marcos Gonzalez, Maria del Carmen Cruz Hernandez, and Guadalupe Karina Nava Rivera.  All of these individuals have valid EADs that Defendants refuse to accept as proof sufficient to establish authorized presence when they apply for driver's licenses or identification cards.

/ / /

---

[1]  A true and correct copy of Arizona's Executive Order 2012-06 is attached as Exhibit 1.

[2]  A true and correct copy of Arizona Motor Vehicle Division Policy 16.1.4 (rev. Sept. 16, 2013) is attached as Exhibit 2.  Upon information and belief, this is the current version of the policy.

[3]  The U.S. District Court for the District of Arizona already ordered that Defendants make individuals granted Deferred Action for Childhood Arrivals (DACA) eligible for driver's licenses.  *See Ariz. Dream Act Coal. v. Brewer* (*ADAC III*), 81 F. Supp. 3d 795, 811 (D. Ariz. 2015), *aff'd*, 818 F.3d 901 (9th Cir. 2016).

4.      Accordingly, as a result of Defendants' unlawful policy and practice, Plaintiffs and putative class members with authorized presence are unable to obtain or renew Arizona driver's licenses and identification cards.

5.      Arizona's practice of denying driver's licenses and identification cards to certain lawfully present noncitizens with employment authorization creates an impermissible state classification of immigration, not supported by federal law, by distinguishing between categories of individuals with authorized presence in a way the federal government does not.  Accordingly, Defendants' policy violates the Supremacy Clause of the U.S. Constitution for the same reasons the U.S. Court of Appeals for the Ninth Circuit articulated when it held that the denial of driver's licenses to DACA grantees is unconstitutional.  *See Ariz. Dream Act Coal. v. Brewer* (*ADAC IV*), 818 F.3d 901 (9th Cir. 2016).

6.      In addition, because Arizona's policy discriminates against noncitizens without any valid justification, or even a rational basis, Arizona's practice violates the Equal Protection Clause of the U.S. Constitution for substantially the same reasons the U.S. Court of Appeals for the Ninth Circuit and the U.S. District Court for the District of Arizona previously articulated when they held that the denial of driver's licenses to EAD holders with DACA was unconstitutional as a matter of equal protection.  *See Ariz. Dream Act Coal. v. Brewer* (*ADAC II*), 757 F.3d 1053, 1067 (9th Cir. 2014).

## JURISDICTION AND VENUE

7.      This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1343 over Plaintiffs' claims under the U.S. Constitution.  The Court has authority to grant declaratory relief under 28 U.S.C. §§ 2201 and 2202.

8.      Venue is proper in this district under 28 U.S.C. § 1391(b).  All Defendants are sued in their official capacity and their official places of business are all located within this District.  All of the events giving rise to this Complaint occurred within this District.

/ / /

2

## PARTIES

**Plaintiffs**

9.     Yuvianel Osoria is a resident of Arizona.  Ms. Osoria has a young United States citizen daughter who was born with spina bifida, and as a result she received deferred action for humanitarian reasons.  Ms. Osoria would like to apply for a driver's license, but she has been deterred from applying because of the MVD's policy of denying driver's licenses to deferred action recipients.

10.     Lucrecia Rivas Valenzuela has lived in Arizona for over a decade. She has been determined eligible for U nonimmigrant status and is waiting for a visa to become available.  In the meantime, she has been granted deferred action and has an EAD.  In April 2016, Ms. Rivas Valenzuela went to the MVD to apply for a driver's license.  She was denied a driver's license because her EAD was deemed insufficient to establish authorized presence.  Ms. Rivas suffers several harms as a result of being denied a license including, but not limited to, providing adequate care for her children.

11.     Marcos Gonzalez has lived in Arizona for most of his life.  His mother is a survivor of domestic violence and, therefore, qualified for relief under the Violence Against Women Act of 1994 (VAWA).  Mr. Gonzalez, in turn, qualified for derivative immigration relief under VAWA.  Per VAWA, Mr. Gonzalez received deferred action and has an EAD.  He obtained a driver's license before the Executive Order and revised policy went into effect, but was not initially able to renew his license when it expired in 2015 because, according to the MVD, they no longer accepted his EAD as proof of authorized presence.  He is not aware of any other reason for which his license would be denied.  In response to a letter submitted on May 18, 2015, to Defendants' counsel asking for Mr. Gonzalez to be issued a license and to halt their unlawful practice of denying certain EAD holders driver's licenses, Mr. Gonzalez was allowed to get a driver's license.  Because Mr. Gonzalez' deferred action is only granted in one-year increments his EAD must be renewed every year.  As a result, his driver's license must also be renewed every year.  On February 19, 2016, Mr. Gonzalez went to renew his license again and was denied because

the State refused to accept his EAD as proof of authorized presence.  Mr. Gonzalez does not currently have a valid driver's license.  Mr. Gonzalez suffers several harms as a result of being denied a license including, but not limited to, needing to drive to work but fearing that if he does he will be pulled over, cited for driving without a license, and that his car will be towed.  This lack of a license makes it even more difficult for Mr. Gonzalez to take care of his three children while managing a full-time job.

12.    Maria del Carmen Cruz Hernandez has lived in Arizona since 2001.  She applied for U nonimmigrant status after agreeing to assist law enforcement officials to prosecute her abuser, and her application is pending.  She has been granted deferred action and has an EAD.  In 2016, Ms. Cruz Hernandez went to the MVD to apply for a driver's license.  She was denied a driver's license because her EAD was deemed insufficient to establish authorized presence. Ms. Cruz suffers irreparable harms as a result of being unable to obtain a license including, but not limited to, being denied employment opportunities due to her lack of a driver's license and being unable to drive herself to her doctor's appointments to address her serious medical condition.

13.    Guadalupe Karina Nava Rivera has lived in Arizona since 2004.  She is waiting to receive U nonimmigrant status.  She has been granted deferred action and has an EAD.  Ms. Nava has tried applying for an Arizona driver's license multiple times, including as recently as October 2015, but has been denied a license because the MVD deemed her EAD insufficient to establish authorized presence. Ms. Rivera suffers several harms as a result of being denied a license including, but not limited to, having to turn down job offers with better pay and more flexible hours due to not having a driver's license.

**Defendants**

14.    **Defendant Doug Ducey** succeeded Janice Brewer as the Governor of Arizona.  While Gov. Brewer issued the Executive Order at issue in this case, Defendant Ducey has not rescinded the order and has not directed ADOT or the MVD to alter the remnants of their unconstitutional policy.  Instead, as Governor, Defendant Ducey has continued to

defend the Executive Order and ADOT policy in court.  Defendant Ducey is sued in his official capacity.

15.     At all times relevant to this action, **Defendant John S. Halikowski** has been the Director of ADOT, which is the agency with authority to license drivers and enforce motor vehicle statutes.  ARIZ. REV. STAT. § 28-332(B).  As Director, Defendant Halikowski "is responsible for the administration of the department" and has the authority to adopt rules he deems necessary to carry out ADOT's responsibilities.  ARIZ. REV. STAT. § 28-331; *see also* ARIZ. REV. STAT. § 28-366.  Defendant Halikowski is sued in his official capacity.

16.     **Defendant Eric Jorgenson** is the Director of the MVD, which is a division of the ADOT.  *See* ARIZ. REV. STAT. § 28-332(C).  The MVD is the division of the ADOT charged with the responsibility of licensing drivers.  Defendant Jorgenson is responsible for the administration of all Motor Vehicle Departments in the state of Arizona. The prior Director of the MVD, Stacey K. Stanton, issued policies instructing that EADs for certain EAD holders may not be used to establish eligibility for an Arizona driver's license.  *See* Ex. 2, MVD Policy 16.1.4(S) (rev. Sept. 17, 2013).  Defendant Jorgenson has maintained this policy.  Defendant Jorgenson is sued in his official capacity.

## BACKGROUND

**Deferred Action**

17.     For decades, the federal government has used deferred action to authorize numerous groups of immigrants to live and work in the United States for a temporary period.  Over the last few decades, deferred action has been made available to various groups of noncitizens, including: certain victims of human trafficking and sexual exploitation; certain relatives of victims of terrorism; surviving family members of a lawful permanent resident member of the armed forces; spouses and children of U.S. citizens or lawful permanent residents who are survivors of domestic violence; certain surviving spouses of U.S. citizens; foreign students affected by Hurricane Katrina; immigrant youth brought to the country as children; and applicants for certain types of

visas.   In addition, federal immigration authorities may grant deferred action on an individual basis, including, for example, to a person whose continued presence is desired by law enforcement for an ongoing investigation.

18.     Recipients of deferred action are eligible to apply for and receive employment authorization under federal law upon a showing of economic necessity.  *See* 8 C.F.R. § 274a.12(c)(14).

19.     The federal Executive's authority to grant deferred action to noncitizens derives from his statutory authority over "administration and enforcement" of the Immigration and Nationality Act (INA), including the power to "perform such . . . acts as he deems necessary for carrying out his authority."  8 U.S.C. §§ 1103(a)(1), (3).  That discretion granted by Congress includes the discretion to "decide whether it makes sense to pursue removal at all."  *Arizona v. United States*, 132 S. Ct. 2492, 2499 (2012).

20.     The INA expressly provides for deferred action as a form of relief that can be granted at the Executive's discretion.  For example, INA § 237(d)(2) (codified at 8 U.S.C. § 1227(d)(2)), allows a noncitizen who has been denied an administrative stay of removal to apply for deferred action.  Certain individuals are also "eligible for deferred action" under the INA if they qualify under a set of factors.  *See* INA §§ 204(a)(1)(D)(i)(II), 8 U.S.C. § 1154(a)(1)(D)(i)(II).

21.     Deferred action is an example of the federal government's exercise of the discretionary authority granted by the Constitution and Congress in immigration matters.  Indeed, Congress repeatedly has recognized in the INA and other legislation that the Executive Branch has discretion to grant deferred action and other forms of discretionary relief under the immigration laws.

22.     Regardless of the reason that an individual is granted deferred action, the result is the same: the federal government has authorized an individual's presence in the United States.

23.     DED is another example of the federal government's exercise of the discretionary authority. DED grants certain qualified citizens and nationals of designated countries a temporary, discretionary, administrative protection from removal from the United States.  The President determines which countries will be designated based upon issues that may include, but are not limited to, ongoing civil strife, environmental disaster, or other extraordinary or temporary conditions. The decision to grant DED is issued as an Executive Order or Presidential Memorandum.

24.     Recipients of DED are eligible to apply for and receive employment authorization under federal law upon a showing of economic necessity.  *See* 8 C.F.R. §§ 274a.12(a)(11).

**Arizona Driver's License Practice**

25.     Arizona law requires that an applicant for an instruction permit, driver's license, or identification card submit proof that the applicant's "presence in the United States is authorized under federal law." ARIZ. REV. STAT. §§ 28-3153(D), 28-3158(C), 28-3165(F).

26.     Specifically, Section 28-3153(D) provides that "[n]otwithstanding any other law, the department shall not issue to or renew a driver license or nonoperating identification license for a person *who does not submit proof satisfactory to the department that the applicant's presence in the United States is authorized under federal law*." ARIZ. REV. STAT. § 28-3153(D) (emphasis added).  The statute further provides that the ADOT shall establish procedures for "[v]erification that the applicant's presence in the United States is authorized under federal law."  ARIZ. REV. STAT. § 28-3153(D)(1).

27.     The policy of the MVD *prior* to the announcement of the 2012 DACA program was that any currently valid EAD document was sufficient to prove that an applicant's presence was "authorized under federal law."  *See* MVD, Primary and Secondary Forms of Acceptable Documentation.

28.     Because deferred action recipients and individuals granted DED are eligible for employment authorization under federal law, *see* 8 C.F.R. §§ 274a.12(a)(11), (c)(14),

Defendants' policy allowed for these individuals, as well as other noncitizens submitting EADs, to use these documents as proof of "authorized" presence to obtain driver's licenses.

29.     Up until 2012, Arizona allowed any individual with a valid EAD to obtain a driver's license regardless of the code on that EAD.  But Arizona began denying driver's licenses and identification cards to individuals with specific codes on their EADs shortly after the Secretary of Homeland Security initiated the DACA program in June 2012, which provides temporary protection from deportation and work authorization for certain immigrant youth brought to the United States as children.

30.     On August 15, 2012, then-Governor Brewer issued the Executive Order, instructing state agencies to take necessary steps to "prevent Deferred Action recipients from obtaining eligibility, . . . for any . . . state identification, including a driver's license." *See* Arizona Executive Order 2012-06.  According to its title, the Executive Order purports to "[r]e-affirm [the] [i]ntent of Arizona [l]aw [i]n [r]esponse to the [f]ederal [g]overnment's [d]eferred [a]ction [p]rogram." *Id.*

31.     The Executive Order states that "Arizona Revised Statutes § 28-3153 prohibits the Arizona Department of Transportation (ADOT) from issuing a drivers [sic] license or nonoperating identification license unless an applicant submits proof satisfactory to ADOT that the applicant's presence in the United States is authorized under federal law." *Id.*  The Executive Order further states that "the Deferred Action program does not and cannot confer lawful or authorized status or presence upon the unlawful alien applicants" and that "[t]he issuance of Deferred Action or Deferred Action USCIS employment authorization documents to unlawfully present aliens does not confer upon them any lawful or authorized status." *Id.*  The Executive Order thus asserts that deferred action recipients are unable to meet the "authorized" presence requirement for driver's licenses and identification.

32.     In a public statement made the same day the Executive Order was issued, then-Governor Brewer stated that the Executive Order was intended to clarify that there would be "no drivers [sic] licenses for illegal people."[4]  Then-Governor Brewer stated, "They are here illegally and unlawfully in the state of Arizona and it's already been determined that you're not allowed to have a driver's license if you are here illegally."[5]

33.     Shortly thereafter, on September 18, 2012, the MVD revised its policies to implement the Executive Order by barring the EADs of DACA recipients from use as evidence of authorized presence in the United States to establish eligibility for driver's licenses and identification cards.[6]

34.     At that time, the MVD continued to accept EADs from all non-DACA deferred action recipients as well as individuals with DED.

35.     This 2012 policy was challenged in federal court in November 2012 by the Arizona Dream Act Coalition (ADAC) and several individual DACA recipients. *See Ariz. Dream Act Coal. v. Brewer* (*ADAC I*), 945 F. Supp. 2d 1049 (D. Ariz. 2013).   While declining to issue a preliminary injunction initially, the district court  held in 2014 that the plaintiffs were likely to establish that the state was unlawfully discriminating against DACA recipients, in part because the State allowed other similarly situated individuals, including those with EADs coded (a)(11) and (c)(14) who were indistinguishable from DACA recipients, to get licenses. *See id.* at 1061.   The court also held that Arizona was unlikely to be able to establish that it had any rational basis for such discrimination. *Id.* at 1070-73.[7]

---

[4] *Why Did Brewer Issue 'Dreamer' Order?*, ARIZ. REPUBLIC (Aug. 15, 2012), http://www.azcentral.com/video/#/Why+did+Brewer+issue+%27dreamer%27+order%3F/1787777903001 (documenting remarks by then-Governor Brewer).
[5] *Jan Brewer Bars IDs, Benefits for Undocumented Immigrants in Arizona*, FOX NEWS LATINO (Aug. 16, 2012), http://latino.foxnews.com/latino/politics/2012/08/16/brewer-blocks-id-benefits-for-undocumented-immigrants/.
[6] A true and correct copy of Arizona Motor Vehicle Division Policy 16.1.4(S) (rev. Sept. 18, 2012) is attached as Exhibit 3.
[7] The district court's holding with regard to irreparable harm was reversed by the Ninth Circuit. *See ADAC II*, 757 F.3d at 1067.

36.     Despite this ruling that Arizona's policy targeting DACA recipients would likely be found unconstitutional, Defendants expanded the discrimination to additional groups of noncitizens.  *See* Ex. 2. This revised policy denied driver's licenses to other noncitizens with deferred action (beyond the DACA program) who presented EADs as well as individuals with DED.  *See ADAC IV*, 818 F.3d at 907 (noting Arizona's shifting policy).  This discriminatory expansion was apparently adopted to support the State's argument that it was now treating all "similarly situated" persons alike and to defend Arizona's illegal policy of denying driver's licenses to individuals who were granted DACA.

37.     On appeal, the U.S. Court of Appeals for the Ninth Circuit held that the plaintiffs in *ADAC II* were likely to succeed on the merits of their claim that Defendants' 2013 policy was discriminatory and established that the plaintiffs, who were DACA recipients with EADs, were likely to succeed on the merits of their equal protection claim.  *See ADAC II*, 757 F.3d at 1067.  The Ninth Circuit remanded the case to the district court with instructions to enter a preliminary injunction against Arizona's policy.  *Id.* at 1069.  The district court then entered a preliminary injunction allowing DACA recipients holding EADs to apply for driver's licenses in Arizona.

38.     On January 22, 2015, the district court granted summary judgment on behalf of the plaintiffs.  *ADAC III*, 81 F. Supp. 3d at 811. The court held that the new MVD Policy 16.1.4 continued to unconstitutionally discriminate against DACA recipients, *id.* at 805-08, and the court permanently enjoined the State from engaging in this discrimination, *id.* at 811.  This permanent injunction was subsequently upheld by the Ninth Circuit.  *See ADAC IV*, 818 F.3d at 919.

39.     However, because the only plaintiffs in that lawsuit were DACA recipients and a membership organization of DACA recipients, the district court's order applied only to DACA recipients with EADs coded (c)(33).  *ADAC III*, 81 F. Supp. 3d at 810-11.

40.    Despite this controlling precedent establishing the illegality of the State's current policy, MVD Policy 16.1.4 continues to deny some EAD holders the ability to use their EADs to establish authorized presence when applying for driver's licenses, while allowing all other individuals to use their EADs for this purpose.

**Defendants' Policy Harms Plaintiffs**

41.    Defendants' policy of denying driver's licenses and identification cards to certain deferred action EAD holders, including Plaintiffs, pursuant to the Executive Order and its implementing policies, is currently in effect.

42.    As a result, Defendants, acting under the color of state law, are violating Plaintiffs' rights under the U.S. Constitution by continuing to enforce Arizona's practice of denying driver's licenses and identification cards to certain individuals granted deferred action, including Plaintiffs.

43.    Moreover, Defendants' practice of denying driver's licenses and identification cards and imposing illegal burdens on certain individuals with deferred action and adding onerous restrictions to the daily lives of Plaintiffs.

44.    Defendants' policy and practices are causing substantial irreparable harm to Plaintiffs and the putative class.  In addition to the harms described above, because Plaintiffs and the putative class are not licensed to drive, they are, inter alia, prevented from driving legally in order to go to work, school, church, or medical appointments; taking their children or other family members to work, school, church, or medical appointments; accepting employment opportunities requiring a driver's license; conducting many basic activities of everyday life; and engaging in family and friendship relations with those outside of walking distance.  In order to manage these basic activities of daily life, Plaintiffs cannot rely on themselves for transportation; instead, they are forced to rely on rides from others, take public transportation where available, or risk criminal penalties, fines, and impoundment by driving without a license, all to their

detriment. Plaintiffs and the putative class are also harmed by having an unconstitutional policy enforced against them.

45.    Thus, the unlawful denial of driver's licenses to Plaintiffs causes them irreparable harm. Such harm is irreparable because no reasonable remedy can make a person whole after they have been denied a license for a period of time, having already suffered the indignity, stress, and inconvenience of losing their autonomy due to a discriminatory policy.

46.    If the Executive Order and MVD Policy 16.1.4 are not enjoined, Plaintiffs and the putative class will continue to suffer irreparable injury and be hampered in conducting these basic activities of daily everyday life.

47.    There is an actual and substantial controversy between Plaintiffs and Defendants.

48.    Plaintiffs and the putative class have no plain, speedy, and adequate remedy at law against the Executive Order and MVD Policy 16.1.4 other than the relief requested in this Complaint.

49.    By enforcing the Executive Order and MVD Policy 16.1.4 to deny driver's licenses and identification cards to Plaintiffs, Defendants are denying Plaintiffs and the class rights secured to them under the U.S. Constitution and laws.

50.    Plaintiffs and the class are entitled to a declaration that Executive Order 2012-06, MVD Policy 16.1.4, and their implementing policies are unconstitutional as applied to individuals with EADs that are rejected as proof of authorized presence, and to a preliminary and permanent injunction enjoining Defendants from denying such licenses.

### CLASS ACTION ALLEGATIONS

51.    The Plaintiffs bring this action on behalf of themselves and all others similarly situated pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(2). The class, as proposed by Plaintiffs, consists of all individuals who present or will present an EAD in order to establish authorized presence but will nevertheless be denied an Arizona driver's

12

licenses and identification cards resulting from Defendants' 2013 policy pursuant to the Executive Order, MVD Policy 16.1.4 and related practices.

52.     Plaintiffs meet all the requirements of Federal Rules of Civil Procedure 23(a) and 23(b)(2) because the class is so numerous that joinder of all class members is impracticable.

53.     There are questions of law and fact common to all class members, including whether the Executive Order, MVD Policy 16.1.4, and their implementing policies violate the Supremacy Clause and the Equal Protection Clause of the U.S. Constitution.

54.     The claims of the Individual Plaintiffs are typical of the proposed class. Plaintiffs are ineligible for Arizona driver's licenses and identification cards as a result of the Executive Order, MVD Policy 16.1.4, and their implementing policies, which bar certain EADs provided to deferred action recipients from being used to establish authorized presence in the United States.

55.     All of the Plaintiffs will fairly and adequately represent the interests of all members of the proposed class, and seek relief on behalf of the class as a whole, and have no interests antagonistic to other members of the class.  The Individual Plaintiffs are also represented by experienced immigrants' rights and class action counsel, including the National Immigration Law Center, the Mexican American Legal Defense and Educational Fund, and the Ortega Law Firm.

56.     Finally, Defendants have acted or will act on grounds generally applicable to the class in enforcing the Executive Order, MVD Policy 16.1.4, and their implementing policies, thereby making final injunctive relief appropriate with respect to the class as a whole.

**FIRST CLAIM FOR RELIEF**
**(Supremacy Clause, Article VI, Clause 2, of the United States Constitution; 42 U.S.C. § 1983)**

57.     The Plaintiffs re-allege and incorporate all of the allegations contained in the previous paragraphs of this complaint as though fully set forth herein.

58.     The federal government has sole and exclusive power to regulate immigration. The federal government's exclusive power over immigration matters is inherent in the nation's sovereignty, and derives from the U.S. Constitution's grant to the federal government of the power to "establish an uniform Rule of Naturalization," U.S. Const. art. I, § 8, cl. 4, and to "regulate Commerce with foreign Nations," *id.* cl. 3.

59.     As part of its immigration power, the federal government has exclusive authority to enact and enforce regulations concerning which noncitizens to admit, exclude, remove, or allow to remain in the United States.  The federal government also has exclusive authority over the terms and conditions of a noncitizen's stay in the United States.  Further, the federal government has exclusive authority to classify noncitizens, which includes determining the categories of noncitizens who are granted federal authorization to remain in the United States.  In contrast, state governments have none of these powers.

60.     Pursuant to its powers, the federal government has established a comprehensive system of laws, regulations, procedures, and administrative agencies that determine, subject to judicial review, whether and under what conditions a noncitizen may enter and live in the United States, when a noncitizen may be subject to removal, and when a noncitizen may be eligible for relief from removal, either temporarily or permanently.

61.     The Supremacy Clause—Article VI, Clause 2—mandates that federal law preempts state law in any area over which Congress expressly or impliedly has reserved exclusive authority or which is constitutionally reserved to the federal government, including where state law conflicts or interferes with federal law.

62.     Pursuant to the Supremacy Clause, federal law preempts state regulation of any area over which Congress has expressly or impliedly exercised exclusive authority or which is constitutionally reserved to the federal government.

63.     Under the federal immigration system, the federal government can exercise prosecutorial discretion, including through deferred action or DED, to authorize

1  noncitizens to remain in the United States for a period of time and to work in the United
2  States.

3     64.    Executive Order 2012-06, MVD Policy 16.1.4, and their implementing policies
4  impermissibly regulate immigration by, inter alia, creating a new, state-based
5  classification of noncitizens that treats deferred action recipients as though they were
6  unauthorized and unlawfully present.

7     65.    Executive Order 2012-06 and its implementing policies denying deferred action
8  recipients driver's licenses and identification cards conflicts with, frustrates, and serves as
9  an obstacle to federal immigration law, goals, and policies by, inter alia, creating a new,
10  state-based classification of noncitizens that treats deferred action recipients as though
11  they are not authorized by federal law to be present in the United States when the federal
12  government has granted such authorization.

13     66.    Executive Order 2012-06, MVD Policy 16.1.4, and their implementing policies
14  are preempted because they are an impermissible state regulation of immigration.
15  Through Executive Order 2012-06, MVD Policy 16.1.4, and their implementing policies,
16  Arizona has created its own state-based classification of noncitizens whose presence in the
17  United States is "authorized under federal law," and has erroneously classified certain
18  deferred action and DED EAD holders as lacking federal authorization to remain in the
19  United States.  Arizona's creation of its own immigration classification impermissibly
20  intrudes on the federal government's exclusive authority to regulate immigration, and
21  therefore violates the Supremacy Clause.

22     67.    Executive Order 2012-06, MVD Policy 16.1.4, and their implementing policies
23  are further preempted because they conflict with, frustrate, and serve as an obstacle to
24  federal immigration law, goals, and policies.  Arizona's misclassification of EAD holders
25  as not being "authorized under federal law" to be present in the United States directly and
26  fundamentally conflicts with federal law, in violation of the Supremacy Clause.

27
28

68.     Because Executive Order 2012-06, MVD Policy 16.1.4, and their implementing policies are preempted by federal law, they violate the Supremacy Clause.

69.     Plaintiffs move for relief on this claim directly under the U.S. Constitution and also as an action seeking redress of the deprivation of statutory rights under the color of state law, under 42 U.S.C. § 1983.

## SECOND CLAIM FOR RELIEF

### (Equal Protection Clause, Fourteenth Amendment to the U.S. Constitution; 42 U.S.C. § 1983)

70.     The Plaintiffs re-allege and incorporate all of the allegations contained in the previous paragraphs of this complaint as though fully set forth herein.

71.     The Fourteenth Amendment to the U.S. Constitution provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws."

72.     By barring plaintiffs and putative class members from using their EADs to establish authorized presence in the United States under federal law, while accepting all other EADs for proof of the same, for purposes of applying for state driver's licenses and identification cards, Arizona's policies and practices discriminate against plaintiffs and putative class members recipients in violation of the Equal Protection Clause of the Fourteenth Amendment.

73.     Because Arizona's policies and practices bar plaintiffs and putative class members from receiving state driver's licenses and identification cards, the State's policies and practices discriminate against these individuals in violation of the Equal Protection Clause of the Fourteenth Amendment.

74.     MVD Policy 16.1.4 constitutes impermissible discrimination by state officers and officials against certain noncitizens on the basis of alienage and deprives such noncitizens of equal protection of the laws within the meaning of the Fourteenth Amendment to the U.S. Constitution.

75.     The Defendants' decision to single out and deny driver's licenses and identification cards to certain individuals granted EADs, while providing these documents to all other noncitizens with EADs, including individuals granted DACA and other forms of authorization to remain in the United States, does not rationally further any legitimate state goal.

76.     In 2012, Defendants initially impermissibly singled out DACA recipients.  The original policy facially targeted these noncitizens on the basis of their alienage or immigration category.

77.     The 2013 amendments to MVD Policy 16.1.4 expanded this discriminatory treatment to other EAD holders with authorized presence as an attempt to justify the State's unconstitutional discrimination against DACA recipients, by denying driver's licenses and identification cards to an additional set of individuals.

78.     As set forth above, deferred action and DED EAD holders have been granted authorization to remain in the United States by federal immigration officials for a certain time period, and are permitted to live and work in the United States.

79.     Defendants' current policy was an attempt to defend its denial of driver's licenses to DACA recipients, motivated by animus against these individuals.  This animus cannot serve as a rational basis for discrimination against those EAD holders currently barred by MVD Policy 16.1.4 from using their EADs, as proof that their presence in the United States has been authorized by the federal government.

80.     Defendants have no other rational basis for discriminating against plaintiffs and putative class members.

81.     Plaintiffs move for relief on this claim directly under the U.S. Constitution and as an action seeking redress of the deprivation of statutory rights under the color of state law, also under 42 U.S.C. § 1983.


**PRAYER FOR RELIEF**

1      WHEREFORE, Plaintiffs pray for the following relief:

2      A.     A preliminary and permanent injunction enjoining Defendants, their officials,

3 agents, employees, assigns, and all persons acting in concert or participating with them

4 from implementing or enforcing the State's illegal policy and practice of denying driver's

5 licenses and identification cards to federally authorized immigrants in Arizona;

6      B.     A declaration pursuant to 28 U.S.C. §§ 2201 and 2202 that Arizona's policies

7 and practice of denying driver's licenses and identification to EAD holders is unlawful and

8 invalid;

9      C.     An order awarding Plaintiffs' costs of suit and reasonable attorneys' fees and

10 expenses pursuant to 42 U.S.C. § 1988 and any other applicable law; and

11      D.     Such other and further relief as the Court deems equitable, just, and proper.

12

13 Dated this 12th day of September, 2016     By /s/ Daniel R. Ortega, Jr.

14 Karen C. Tumlin
Nicholas Espíritu
15 Nora A. Preciado
NATIONAL IMMIGRATION LAW
16 CENTER
3435 Wilshire Boulevard, Suite 1600
17 Los Angeles, CA  90010
T: (213) 639-3900
18 F: (213) 639-3911
*tumlin@nilc.org*
19 *espiritu@nilc.org*
*preciado@nilc.org*
20

21 Victor Viramontes
Julia Gomez
22 MEXICAN AMERICAN LEGAL
DEFENSE AND EDUCATIONAL
FUND
23 634 S. Spring Street, 11th Floor
Los Angeles, CA  90014
24 T: (213) 629-2512
F: (213) 629-0266
25 *vviramontes@maldef.org*
*jgomez@maldef.org*
26

27 Tanya Broder
NATIONAL IMMIGRATION LAW
28

CENTER
2030 Addison Street, Suite 310
Berkeley, CA  94704
T: (510) 663-8282
*broder@nilc.org*

Daniel R. Ortega, Jr.
Ortega Law Firm, P.C.
361 East Coronado Road, Suite 101
Phoenix, Arizona 85004
T: (602) 386-4455-phone
*danny@ortegalaw.com*

*Attorneys for Plaintiffs*

EXHIBIT 1

Executive Order 2012-06

**Re-Affirming Intent of Arizona Law In Response to the Federal Government's Deferred Action Program**

**WHEREAS**, United States Citizenship and Immigration Services (USCIS) plans to issue employment authorization documents to certain unlawfully present aliens who are granted Deferred Action under federal immigration laws; and

**WHEREAS**, the USCIS has confirmed that the Deferred Action program does not and cannot confer lawful or authorized status or presence upon the unlawful alien applicants; and

**WHEREAS**, unless otherwise made available under applicable law, 8 United States Code § 1621 provides that aliens unlawfully present in the United States are not eligible for any state or local public benefit -- as defined in both federal and Arizona law; and

**WHEREAS**, 8 United States Code § 1622 authorizes states to determine eligibility for any state public benefits for most classes of aliens, including unlawfully present aliens with Deferred Action; and

**WHEREAS**, the Deferred Action program is purportedly an act of prosecutorial discretion and the program does not provide for any additional public benefit to unlawfully present aliens beyond the delayed enforcement of United States immigration laws and the possible provision of employment authorization; and

**WHEREAS**, Arizona Revised Statutes § 1-501 and § 1-502 limit access to public benefits to persons demonstrating lawful presence in the United States; and

**WHEREAS**, Arizona Revised Statutes § 28-3153 prohibits the Arizona Department of Transportation (ADOT) from issuing a drivers license or nonoperating identification license unless an applicant submits proof satisfactory to ADOT that the applicant's presence in the United States is authorized under federal law; and

**WHEREAS**, the federal executive's policy of Deferred Action and the resulting federal paperwork issued could result in some unlawfully present aliens inappropriately gaining access to public benefits contrary to the intent of Arizona voters and lawmakers who enacted laws expressly restricting access to taxpayer funded benefits and state identification; and

**WHEREAS**, allowing more than an estimated 80,000 Deferred Action recipients improper access to state or local public benefits, including state issued identification, by presenting a USCIS employment authorization document that does not evidence lawful, authorized status or presence will have significant and lasting impacts on the Arizona budget, its health care system and additional public benefits that Arizona taxpayers fund.

**NOW THEREFORE, I,** Janice K. Brewer, Governor of the State of Arizona, by virtue of the authority vested in me by the Constitution and laws of the State of Arizona, do hereby order and direct as follows:

1.  The issuance of Deferred Action or Deferred Action USCIS employment authorization documents to unlawfully present aliens does not confer upon them any lawful or authorized status and does not entitle them to any additional public benefit.

2.  State agencies that provide public benefits, as defined in 8 United States Code § 1621 shall conduct a full statutory, rule-making and policy analysis and, to the extent not prohibited by state or federal law, initiate operational, policy, rule and statutory changes necessary to prevent Deferred Action recipients from obtaining eligibility, beyond those available to any person regardless of lawful status, for any taxpayer-funded public benefits and state identification, including a driver's license, so that the intent of Arizona voters and lawmakers who enacted laws expressly restricting access to taxpayer funded benefits and state identification are enforced.

Executive Order 2012-06
Page 2 of 2

3. All state agencies that confer taxpayer-funded public benefits and state issued identification shall undergo emergency rule making to address this issue if necessary.



**IN WITNESS WHEREOF,** I have hereunto set my hand and caused to be affixed the Great Seal of the State of Arizona.

**GOVERNOR**

**DONE** at the Capitol in Phoenix on this 15th day of August in the Year Two Thousand Twelve and of the Independence of the United States of America the Two Hundred and Thirty-Seventh.

**ATTEST:**

**SECRETARY OF STATE**

EXHIBIT 2


Motor Vehicle Division

Mail Drop 530M
PO Box 2100
Phoenix AZ  85001

**POLICY
16.1.4**

## ESTABLISHING AUTHORIZED PRESENCE

### Summary of Changes

Amended Section S to include a bulleted list and category codes related to the use of a USCIS Employment Authorization Card. Non-operating identification card was added to the bulleted list in section D.

### Purpose

To provide guidelines for the Customer Service Representative (CSR) to use when establishing authorized presence and, when applicable, issuing a Type F (limited) license.

### Policy

A. Arizona Revised Statutes (A.R.S.) § 28-3153(D) provides that the Motor Vehicle Division (MVD) shall not issue to or renew a driver license or non-operating identification license for a person who does not submit proof satisfactory to MVD that the applicant's presence in the United States is authorized under federal law. MVD is required to determine that each applicant meets the requirements of the law.

B. MVD reserves the right to review, consider and request additional information and documentation in making determinations regarding authorized presence.

C. The CSR shall ensure that the customer meets authorized presence requirements (when applicable) and that the documentation presented is genuine and in proper form.

D. The customer must present proof of authorized presence when applying for:
   - An original Arizona license
   - The renewal of a limited Arizona license
   - The renewal of an extended Arizona license when there is no database record showing the customer's previous establishment of authorized presence
   - The reinstatement of any license
   - Non-operating identification card

Exception:   An individual who wishes to reinstate his or her driving privilege only (person is not applying for an Arizona license, either original or renewal) is not required to provide proof of authorized presence and would pay reinstatement fees only.

E. A database record of an extended Arizona driver license, commercial driver license, identification license, or instruction permit is acceptable proof of authorized presence.

F. Authorized presence requirements *do not apply* to the following transactions:
   - Requests for a duplicate or update of any license, regardless of the license issue date
   - Renewal of an extended license, under the circumstances provided in Section D, above
   - Title and/or registration transactions

ESTABLISHING AUTHORIZED PRESENCE
Page 2 of 4

G. To prove authorized presence, the customer must present at least one primary form of identification, see Policy 16.1.2 Acceptable Documentation. All documents must be in English and either an original or copy certified by the issuing agency. Depending on the primary form of identification presented, additional documentation may be required.

H. A foreign passport (must be accompanied by a valid I-94 or an admissions stamp), Canadian driver license or Canadian birth certificate may be accepted as proof of the customer's authorized presence in the U.S. However, any other document issued by a foreign government (or agency) shall not be accepted for the purpose of proving authorized presence.

Note: Customers may present an electronic Form I-94, the arrival and departure record in paper format obtained from The United States (U.S.) Customs and Border Protection (CBP) website. This applies only to foreign visitors arriving in the U.S. by sea or air.

I. A limited (Type F) license is issued to a customer who is applying for an identification license or Class D, G, or M driver license (or instruction permit) and whose period of authorized presence is for a limited period of time; as determined by the primary form of identification and any supporting documentation that is presented at the time of application, see the Authorized Presence Document/License Expiration Date Chart and/or Customer Characteristics-USCIS Class Matrix.

J. Prior to the issuance of a Type F license, the customer must meet all applicable eligibility and identity requirements, see the appropriate Driver and Identification License Issuance Screening policies.

K. Pursuant to A.R.S. § 28-3002, a customer requesting an original (or renewing a) license must pay the applicable license fee, see Policy 16.1.6 Driver and Identification License Fees.

L. Prior to the issuance of the Type F license, Customer Service supervisors or their designees shall verify and approve the customer's documentation. This includes documentation for Type F customers that present a verifiable Social Security Number/Card with their foreign documents. The CSR shall photocopy all approved source documents presented for the purpose of establishing name, date of birth, and authorized presence. The photocopied source documents, once processed (reviewed, verified, and accepted), are filmed to serve as evidence of the public filing of the licensing transaction, see Policy 5.1.3 Film Imaging Preparation

1. This does not apply to Type F duplicates/updates that do not require proof of authorized presence.
2. The Technical Support Unit cannot verify or approve authorized presence documentation, or issue a Type F license.
3. Authorized Third Party Providers are not authorized to issue Type F licenses.

M. The Type F license expiration date shall coincide with the customer's assigned authorized presence expiration date (as shown on the primary form of identification or supporting documentation (e.g., I-20, I-797, DS-2019, etc.), unless an indefinite status or duration of status (D/S) has been granted.

ESTABLISHING AUTHORIZED PRESENCE
Page 3 of 4

Note:  To determine the license expiration date when the authorized presence documentation does not display a specific expiration date or simply states D/S, see the Authorized Presence Document/License Expiration Date Chart and/or Customer Characteristics-USCIS Class Matrix.

N. Prior to the Customer Service supervisor or their designees issuing the Type F license (delivering to camera), the CSR shall enter the applicable Customer Characteristic onto the Customer Record.  Once added to the Customer Record the characteristic remains valid until expired.  Customer Service supervisors and their designees are authorized to delete a characteristic that was entered in error.  When a characteristic cannot be deleted, the supervisor or designee will "expire" the characteristic and enter an explanation in the Customer Characteristic transaction comment section.

O. Except as provided in Section S, upon application for a Type F license, a customer who presents a USCIS Employment Authorization Card must also provide his or her Social Security Number (SSN), see Policy 2.1.8 Social Security Online Verification (SSOLV).  The Customer Characteristics-USCIS Class Matrix provides information on additional Type F customers required to provide a SSN.

P. A Type F licensee, who is requesting that the name on his or her license be changed, must first change his or her name with the Social Security Administration, as applicable, before applying for the new license, see Policy 16.1.3 Establishing Name and Date of Birth.

Q. Pursuant to A.R.S. § 28-3153, the CSR may issue a temporary Type F license (Class D, G, or M) pending verification of the customer's lawful presence in the U.S.   To be eligible, the customer must submit a valid Notice of Action, form I-797, or other acceptable immigration or citizenship document and a fee of $10.  The temporary license:
- Is a hard copy license
- Is valid for a maximum duration of 1 year at a time

Exception:   With the approval of the Director's designee, alternative methods of status verification, including consultation with USCIS, may be used to issue a temporary Type F license.

R. USCIS may assign a classification or status that prohibits the issuance of an Arizona license, see the Customer Characteristics-USCIS Class Matrix for information in regards to the various USCIS classification statuses and the Division's established expiration dates.  A customer whose authorized presence document indicates any one of the following USCIS classification statuses is not eligible for any class or type Arizona license:
- C-1      Alien in transit directly through U.S.
- C-1D    Combined Transit and Crewman VISA
- C-2      Alien in transit to UN headquarters
- C-3      Foreign government official, members of immediate family, attendant, servant, or personal employee in transit
- D-1      Crewmember departing on same vessel of arrival
- D-2      Crewmember departing by means other than vessel of arrival

ESTABLISHING AUTHORIZED PRESENCE
Page 4 of 4

S. A USCIS Employment Authorization Card (EAC) with one of the following category codes is not acceptable:
- Category A11 (Deferred Enforced Departure),
- Category C14 (Deferred Action), or
- Category C33 (Deferred Action for Childhood Arrivals)

See the Authorized Presence Document/License Expiration Date Chart and/or Customer Characteristics-USCIS Class Matrix.

T. The Division will not issue a license or permit (extended, limited, or temporary) when the customer presents documentation (may include a license) that does not appear to be legitimate or acceptable. CSRs, Customer Service supervisors, or designees shall follow the instructions provided in Policy 18.2.6 Suspected Fraudulent Identity and/or Documentation when they suspect that the customer may not be the person identified by the documentation or the documentation does not appear to be legitimate.

U. The U.S. Department of State Diplomatic Motor Vehicles Division has the sole authority to issue driver licenses, vehicle registrations, and titles for foreign missions and foreign mission members. States may not issue, and foreign mission or mission members may not legally apply for or receive a state driver license, motor vehicle title, registration and license plate in violation of limitations and conditions imposed by the Department of State, (this does not include Honorary Consuls). Visit the Department of State's Diplomatic Motor Vehicles Division website at www.state.gov/ofm/dmv/.

V. Any individual with a class "A" or "G" visa applying for motor vehicle services including driver licenses, vehicle registrations, motor vehicle titles, or license plates must present a United States State Department-issued original "Non-Eligibility Letter"

_16 September 2013_
Date

STACEY K. STANTON
Division Director

Authority: USC 8, A.R.S. §§ 28-3002, 28-3153, 28-3157, 28-3158, 28-3164, 28-3165, R17-4-409 and Executive Order 2012-06
Procedure/Steps: Screening, Customer Characteristics, Customer Characteristics (MDCHAR)

EXHIBIT 3



**Motor Vehicle Division**
ADOT

Mail Drop 530M
PO Box 2100
Phoenix AZ 85001

**POLICY**
**16.1.4**

## ESTABLISHING AUTHORIZED PRESENCE

**Summary of Changes**

Policy Sections A, B, O and S were revised.

**Purpose**

To provide guidelines for the Customer Service Representative (CSR) to use when establishing authorized presence and, when applicable, issuing a Type F (limited) license.

**Policy**

A. Arizona Revised Statutes (A.R.S.) § 28-3153(D) provides that the Motor Vehicle Division (MVD) shall not issue to or renew a driver license or nonoperating identification license for a person who does not submit proof satisfactory to MVD that the applicant's presence in the United States is authorized under federal law. MVD is required to determine that each applicant meets the requirements of the law.

B. MVD reserves the right to review, consider and request additional information and documentation in making determinations regarding authorized presence.

C. The CSR shall ensure that the customer meets authorized presence requirements (when applicable) and that the documentation presented is genuine and in proper form.

D. The customer must present proof of authorized presence when applying for:
   - An original Arizona license
   - The renewal of a limited Arizona license
   - The renewal of an extended Arizona license when there is no database record showing the customer's previous establishment of authorized presence
   - The reinstatement of any license

Exception:    An individual who wishes to reinstate his or her driving privilege only (person is not applying for an Arizona license, either original or renewal) is not required to provide proof of authorized presence and would pay reinstatement fees only.

E. A database record of an extended Arizona driver license, commercial driver license, identification license, or instruction permit is acceptable proof of authorized presence.

F. Authorized presence requirements *do not apply* to the following transactions:
   - Requests for a duplicate or update of any license, regardless of the license issue date
   - Renewal of an extended license, under the circumstances provided in Section D, above
   - Title and/or registration transactions

G. To prove authorized presence, the customer must present at least one primary form of identification, see Policy <u>16.1.2 Acceptable Documentation</u>.  All documents must be in

ESTABLISHING AUTHORIZED PRESENCE
Page 2 of 4

English and either an original or copy certified by the issuing agency. Depending on the primary form of identification presented, additional documentation may be required.

H. A foreign passport (must be accompanied by a valid I-94 or an admissions stamp), Canadian driver license or Canadian birth certificate may be accepted as proof of the customer's authorized presence in the U.S. However, any other document issued by a foreign government (or agency) shall not be accepted for the purpose of proving authorized presence.

I. A limited (Type F) license is issued to a customer who is applying for an identification license or Class D, G, or M driver license (or instruction permit) and whose period of authorized presence is for a limited period of time; as determined by the primary form of identification and any supporting documentation that is presented at the time of application, see the Authorized Presence Document/License Expiration Date Chart and/or Customer Characteristics-USCIS Class Matrix.

J. Prior to the issuance of a Type F license, the customer must meet all applicable eligibility and identity requirements, see the appropriate Driver and Identification License Issuance Screening policies.

K. Pursuant to A.R.S. § 28-3002, a customer requesting an original (or renewing a) license must pay the applicable license fee, see Policy 16.1.6 Driver and Identification License Fees.

L. Prior to the issuance of the Type F license, Customer Service supervisors or their designees shall verify and approve the customer's documentation. This includes documentation for Type F customers that present a verifiable Social Security Number/Card with their foreign documents. The CSR shall photocopy all approved source documents presented for the purpose of establishing name, date of birth, and authorized presence. The photocopied source documents, once processed (reviewed, verified, and accepted), are filmed to serve as evidence of the public filing of the licensing transaction, see Policy 5.1.3 Film Imaging Preparation
   1. This does not apply to Type F duplicates/updates that do not require proof of authorized presence.
   2. The Technical Support Unit cannot verify or approve authorized presence documentation, or issue a Type F license.
   3. Authorized Third Party Providers are not authorized to issue Type F licenses.

M. The Type F license expiration date shall coincide with the customer's assigned authorized presence expiration date (as shown on the primary form of identification or supporting documentation (e.g., I-20, I-797, DS-2019, etc.), unless an indefinite status or duration of status (D/S) has been granted.

Note: To determine the license expiration date when the authorized presence documentation does not display a specific expiration date or simply states D/S, see the Authorized Presence Document/License Expiration Date Chart and/or Customer Characteristics-USCIS Class Matrix.

N. Prior to the Customer Service supervisor or their designees issuing the Type F license (delivering to camera), the CSR shall enter the applicable Customer Characteristic onto the Customer Record. Once added to the Customer Record the characteristic remains valid until expired. Customer Service supervisors and their designees are authorized to delete a

ESTABLISHING AUTHORIZED PRESENCE
Page 3 of 4

characteristic that was entered in error.   When a characteristic cannot be deleted, the supervisor or designee will "expire" the characteristic and enter an explanation in the Customer Characteristic transaction comment section.

O. Except as provided in Section S, upon application for a Type F license, a customer who presents a USCIS Employment Authorization Card (I-688B or I-766) must also provide his or her Social Security Number (SSN), see Policy 2.1.8 Social Security Online Verification (SSOLV).   The Customer Characteristics-USCIS Class Matrix provides information on additional Type F customers required to provide a SSN.

P. A Type F licensee, who is requesting that the name on his or her license be changed, must first change his or her name with the Social Security Administration, as applicable, before applying for the new license, see Policy 16.1.3 Establishing Name and Date of Birth.

Q. Pursuant to A.R.S. § 28-3153, the CSR may issue a temporary Type F license (Class D, G, or M) pending verification of the customer's lawful presence in the U.S.   To be eligible, the customer must submit a valid Notice of Action, form I-797, or other acceptable immigration or citizenship document and a fee of $10.   The temporary license:
  - Is a hard copy license
  - Is valid for a maximum duration of 1 year at a time

Exception:    With the approval of the Director's designee, alternative methods of status verification, including consultation with USCIS, may be used to issue a temporary Type F license.

R. USCIS may assign a classification or status that prohibits the issuance of an Arizona license, see the Customer Characteristics-USCIS Class Matrix for information in regards to the various USCIS classification statuses and the Division's established expiration dates.   A customer whose authorized presence document indicates any one of the following USCIS classification statuses is not eligible for any class or type Arizona license:
  - C-1      Alien in transit directly through U.S.
  - C-1D    Combined Transit and Crewman VISA
  - C-2      Alien in transit to UN headquarters
  - C-3      Foreign government official, members of immediate family, attendant, servant, or personal employee in transit
  - D-1      Crewmember departing on same vessel of arrival
  - D-2      Crewmember departing by means other than vessel of arrival

S. A customer presenting a USCIS Employment Authorization Document (I-688A, I-688B, I-766) resulting from a Deferred Action Childhood Arrival is not acceptable.

T. The Division will not issue a license or permit (extended, limited, or temporary) when the customer presents documentation (may include a license) that does not appear to be legitimate or acceptable. CSRs, Customer Service supervisors, or designees shall follow the instructions provided in Policy 18.2.6 Suspected Fraudulent Identity and/or Documentation when they suspect that the customer may not be the person identified by the documentation or the documentation does not appear to be legitimate.

ESTABLISHING AUTHORIZED PRESENCE
Page 4 of 4

U. The U.S. Department of State Diplomatic Motor Vehicles Division has the sole authority to issue driver licenses, vehicle registrations, and titles for foreign missions and foreign mission members. States may not issue, and foreign mission or mission members may not legally apply for or receive a state driver license, motor vehicle title, registration and license plate in violation of limitations and conditions imposed by the Department of State, (this does not include Honorary Consuls). Visit the Department of State's Diplomatic Motor Vehicles Division website at www.state.gov/ofm/dmv/.

_17 September 2012_
Date

STACEY K. STANTON
Division Director

Authority: USC 8, A.R.S. §§ 28-3002, 28-3153, 28-3157, 28-3158, 28-3164, 28-3165, R17-4-409 and Executive Order 2012-06
Procedure/Steps: Screening, Customer Characteristics, Customer Characteristics (MDCHAR)