1    **WO**

2

3

4

5

6              **IN THE UNITED STATES DISTRICT COURT**

7                 **FOR THE DISTRICT OF ARIZONA**

8

9    Lucrecia Rivas Valenzuela, et al.,          No. CV-16-03072-PHX-DGC

10              Plaintiffs,                       **ORDER**

11   v.

12   Doug Ducey, et al.,

13              Defendants.

14

15         Plaintiffs argue that Arizona's policy of denying driver's licenses to certain

16   deferred action recipients violates the Supremacy and Equal Protection Clauses of the

17   United States Constitution.  Doc. 1.  This Court and the Ninth Circuit previously held that

18   this same policy violates the Constitution with respect to individuals who receive

19   deferred action through the Deferred Action for Childhood Arrivals ("DACA") program.

20   *Arizona Dream Act Coal. v. Brewer* ("*Dream Act III*"), 81 F. Supp. 3d 795, 799 (D. Ariz.

21   2015); *Arizona Dream Act Coal. v. Brewer* ("*Dream Act IV*"), 818 F.3d 901 (9th Cir.

22   2016).  Plaintiffs now ask the Court to consider the constitutionality of Executive Order

23   2012-06 and Arizona Department of Transportation's ("ADOT") Motor Vehicle Division

24   ("MVD") Policy 16.1.4 with respect to individuals who receive deferred action outside

25   the DACA program and individuals with deferred enforced departure.  Doc. 1.

26         Plaintiffs have filed motions for preliminary injunction (Doc. 30) and class

27   certification (Doc. 27), and Defendants have filed a motion to dismiss or, in the

28   alternative, for judgment on the pleadings (Doc. 37).   All motions have been fully

briefed, and the Court heard oral argument on January 20, 2017.  The Court denied the motion for class certification before oral argument and directed the parties to conduct discovery before filing renewed briefs on the matter.  Doc. 54.  For the reasons set forth below, the Court will deny Defendants' motion to dismiss and Plaintiffs' motion for preliminary injunction.

I.    **Background.**

A.    **Defendants' Driver's License Policy and 2013 Revision.**

A.R.S. § 28–3153(D) states that non-citizens may obtain Arizona driver's licenses by presenting proof that their presence in the United States is authorized under federal law.  On August 15, 2012, then Governor Jan Brewer issued Executive Order 2012-06, which concluded that "issuance of Deferred Action or Deferred Action USCIS employment authorization documents to unlawfully present aliens does not confer upon them any lawful or authorized status and does not entitle them to any additional public benefit."  Doc. 30-3 at 2.  The Executive Order directed state agencies to "conduct a full statutory, rule-making and policy analysis and . . . initiate operational, policy, rule and statutory changes necessary to prevent Deferred Action recipients from obtaining eligibility, beyond those available to any person regardless of lawful status, for any taxpayer-funded public benefits and state identification, including a driver's license[.]"  *Id.*  ADOT Director John S. Halikowski amended his agency's policies to conform with this Executive Order, issuing a revised version of MVD Policy 16.1.4 on September 17, 2012.  Doc. 30-4.  This version of the policy specifically identified EADs issued to DACA recipients as insufficient to demonstrate authorized presence for purposes of obtaining an Arizona driver's license.  *Id.* at 30-4.

Director Halikowski continued to review the policy after the 2012 revision and during the pendency of the lawsuit brought by the Arizona Dream Act Coalition.  *Dream Act III*, 81 F. Supp. 3d at 801.  Noting concerns about inconsistencies in ADOT's treatment of EAD holders, Director Halikowski issued an amended version of the MVD Policy in 2013 that explicitly identified EADs coded (a)(11), (c)(14), or (c)(33) as

insufficient to demonstrate authorized presence for purposes of obtaining a driver's license.  *Id.*; Doc. 27-3.  The (c)(33) category applied to DACA recipients, and the (a)(11) and (c)(14) categories applied to Plaintiffs in this case.  Explaining this amendment, "Director John S. Halikowski testified that Arizona views an EAD as proof of presence authorized under federal law only if the EAD demonstrates: (1) the applicant has formal immigration status; (2) the applicant is on a path to obtaining formal immigration status; or (3) the relief sought or obtained is expressly provided pursuant to the INA."  *Dream Act IV*, 818 F.3d at 907.

### B. Previous Case.

In response to ADOT's refusal to provide driver's licenses to DACA recipients, the Arizona Dream Act Coalition brought suit alleging violations of the Equal Protection and Supremacy Clauses of the United States Constitution.  *See Arizona Dream Act Coal. v. Brewer*, 945 F. Supp. 2d 1049, 1053 (D. Ariz. 2013).  This Court held that ADOT's policy violated the Equal Protection Clause and permanently enjoined ADOT from denying driver's licenses to DACA recipients.  *Dream Act III*, 81 F. Supp. 3d 795.  The Ninth Circuit affirmed the permanent injunction on the basis of preemption, but did not overturn the Court's equal protection ruling.  *Dream Act IV*, 818 F.3d at 920.

### D. Plaintiffs' Deferred Action Status.

Plaintiffs each hold an EAD coded (c)(14) based on his or her pending application for a U-visa or immigration relief under the Violence Against Women Act ("VAWA").  Docs. 30-7, 30-8, 30-9, 30-10, 30-11.  Like DACA recipients, individuals with EADs coded (c)(14) are recipients of deferred action.  Plaintiffs seek to represent the following class: "All noncitizens who present or will present an Employment Authorization Document (EAD) in order to establish authorized presence and are being denied Arizona driver's licenses resulting from Defendants' 2013 policy and related practices pursuant to Executive Order 2012-06, MVD Policy 16.1.4, and MVD Policy 16.1.4's implementing practices."  Doc. 27 at 8.  Plaintiffs made clear during oral argument that this proposed class includes recipients of deferred enforced departure who hold EADs coded (a)(11).

**II.      Motion to Dismiss and for Judgment on the Pleadings.**

Defendants contend that Plaintiffs lack standing and the Court therefore lacks jurisdiction over their claims.  "Unless the jurisdictional issue is inextricable from the merits of a case, the court may determine jurisdiction on a motion to dismiss for lack of jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure."  *Kingman Reef Atoll Invs., L.L.C. v. United States*, 541 F.3d 1189, 1195 (9th Cir.2008).  To resolve a 12(b)(1) motion, the Court does not presume Plaintiffs' allegations to be true and may "look to facts outside the pleadings to determine whether [it] ha[s] jurisdiction." *Cassirer v. Kingdom of Spain*, 616 F.3d 1019, 1043 (9th Cir. 2010).  The Court may "resolv[e] factual disputes where necessary." *Augustine v. United States,* 704 F.2d 1074, 1077 (9th Cir.1983).  But "where the jurisdictional issue and substantive issues are so intertwined that the question of jurisdiction is dependent on the resolution of factual issues going to the merits, the jurisdictional determination should await a determination of the relevant facts on either a motion going to the merits or at trial." *Id.*

Defendants also argue that Plaintiffs' claims against Governor Ducey are barred by sovereign immunity.  They assert that he is not responsible for the policy at issue in this case and therefore cannot be sued under the doctrine of *Ex parte Young*, 209 U.S. 123 (1908).

**A.      Standing.**

"[T]hose who seek to invoke the jurisdiction of the federal courts must satisfy the threshold requirement imposed by Article III of the Constitution by alleging an actual case or controversy."  *City of L.A. v. Lyons*, 461 U.S. 95, 101 (1985) (citations omitted). "[T]he gist of the question of standing" is whether a plaintiff has "alleged such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions[.]"  *Baker v. Carr*, 369 U.S. 186, 204 (1962).  "[A] plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the

injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). Additionally, to establish standing to seek injunctive relief, a party must show that he "is likely to suffer future injury" absent the requested injunction. *Lyons*, 461 U.S. at 105. Although Plaintiffs have the burden as to these requirements, they avoid dismissal of their complaint if they provide facts which plausibly suggest that they have standing. *Barnum Timber Co. v. U.S. E.P.A.*, 633 F.3d 894, 899 (9th Cir. 2011) (finding that a plaintiff had satisfied his burden at the pleading stage when he alleged specific facts which plausibly demonstrated Article III standing).

Defendants argue that the named Plaintiffs are "eligible for Arizona driver's licenses under existing policies and currently have the ability to obtain them." Doc. 37 at 5. As a result, Defendants argue, any injury suffered by Plaintiffs is self-inflicted and insufficient to establish standing. *Id.* at 7-8 (citing several cases, including *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1143 (2013)). Without an identifiable injury, there is no live case or controversy as required by Article III of the Constitution. *Id.* Defendants further assert that "Plaintiffs' allegation that they were previously denied driver's licenses fails to allege an actual case or controversy. Allegations of past wrongs do not themselves establish a real and immediate existing controversy or threat of injury to make a case or controversy." *Id.* at 6.

In support of their contention that Plaintiffs are eligible for driver's licenses under Arizona's policy, Defendants cite to a deposition of ADOT Director Halikowski taken in the previous litigation. Doc. 37 at 4-5 (citing *Ariz. Dream Act. Coal. v. Brewer*, No. 2:12-cv-02546-DGC, Doc. 248-1 ("Deposition")). Citing the Deposition, Defendants argue that their policy allows an individual to show "authorized presence" for purposes of obtaining a driver's license by "providing documentation showing that: (1) the applicant has formal immigration status; (2) the applicant is on the path to obtaining a formal

immigration status; or (3) the relief sought or obtained is expressly provided for pursuant to the INA." *Id.*[1]   After reviewing the Deposition and other information submitted by Defendants, the Court cannot conclude that Plaintiffs lack standing.

"The Supreme Court has articulated a broad conception of Article III standing to bring equal protection challenges." *Braunstein v. Arizona Dep't of Transp.*, 683 F.3d 1177, 1184 (9th Cir. 2012).   If the government has engaged in impermissible discrimination, "those who are personally denied equal treatment have a cognizable injury under Article III." *Id.* at 1185.   The Supreme Court has made clear that "[w]hen the government erects a barrier that makes it more difficult for members of one group to obtain a benefit than it is for members of another group[,] . . . [t]he 'injury in fact' . . . is the denial of equal treatment resulting from the imposition of the barrier, not the ultimate inability to obtain the benefit." *Ne. Florida Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville, Fla.*, 508 U.S. 656, 666 (1993).   *See also Regents of Univ. of California v. Bakke*, 438 U.S. 265, 281 n.14 (1978) (noting with approval that the trial court found the plaintiff's injury to have occurred when the university failed to consider him for all 100 places in the incoming class based on his race, rather than when the plaintiff was ultimately rejected by the university).

Plaintiffs allege that Defendants have a policy of denying driver's licenses to deferred action recipients who present EADs coded (c)(14) or (a)(11).   Doc. 47 at 9. Plaintiffs further allege that Defendants have denied four of the named Plaintiffs licenses because they presented EADs coded (c)(14).   *Id.* at 9-11.[2]   Defendants conceded during oral argument that EADs coded (c)(14) or (a)(11) are not alone sufficient to show

---

[1] The Court notes that the exact scope and meaning of these three criteria may be disputed.   Defendants, however, allege that all five named Plaintiffs satisfy these criteria and thus can establish authorized presence and eligibility for a license.   The Court will assume, for purposes of this motion, that the named Plaintiffs satisfy these criteria.

[2] The fifth named Plaintiff argues that she will be unable to obtain a driver's license or renew her learner's permit because her DACA status and EAD coded (c)(33) expired in October 2016.   Doc. 47-4 at 1.   She has been granted an EAD coded (c)(14), which she argues is insufficient to establish authorized presence for purposes of obtaining a license under Defendants' policy.   *Id.*

authorized presence and obtain an Arizona driver's license.  It also is undisputed that other non-citizens, including individuals with EADs coded (c)(9) or (c)(10), may obtain licenses simply by presenting their EADs.  Plaintiffs thus are treated differently from other non-citizens who hold EADs.  *Id.* at 12.  This denial of equal treatment – recognizing the authorized presence of some non-citizens based on their EADs, but not of others – is an injury sufficient to establish Article III standing.  *Ne. Florida Chapter of Associated Gen. Contractors of Am.*, 508 U.S. at 666.[3]

Defendants argue that the Court should focus not on different treatment as an injury, but on the ultimate outcome – whether Plaintiffs are able to obtain driver's licenses.  The Court does not agree in light of the cases discussed above.  But even if the Court focuses on whether or not Plaintiffs may obtain driver's licenses, the Court finds that Plaintiffs have standing.  Four named Plaintiffs allege that they have applied for and been denied licenses because their EADs were deemed insufficient under Defendants' policy.  Doc. 47 at 10.  Plaintiffs provide a copy of the current MVD Policy 16.1.4, which states that EADs coded (c)(14) and (a)(11) are "not acceptable" to demonstrate authorized presence for purposes of obtaining an Arizona driver's license.  Doc. 27-4 at 5.  Plaintiffs also provide a copy of Defendants' MVD Identification Requirements, which list identification documents sufficient to establish authorized presence for purposes of renewing or obtaining a driver's license.  Doc. 47-6.  The Requirements specifically exclude EADs coded (c)(14) and (a)(11) from the list of satisfactory proof of authorized presence.  *Id.*

Defendants argue that individuals with derivative status under VAWA and those with pending U-visa applications, like Plaintiffs, are eligible for licenses under the existing policies.  Doc. 37 at 2.  They argue that ADOT has a "practice of issuing driver's licenses to [such individuals]."  *Id.*  Defendants assert that "Plaintiffs need only produce

---

[3] The Ninth Circuit has explained that "Article III standing to bring an equal protection challenge is not without limits."  *Braunstein*, 683 F.3d at 1185.  A plaintiff must assert "a particularized injury, rather than a generalized grievance."  *Id.*  Because four of the Plaintiffs have alleged that they have actually been denied licenses when they presented their EADs to ADOT, they have satisfied this requirement.  *Id.*

1  documents establishing proof of their VAWA derivative status or pending U-visa

2  application" to obtain a license.  *Id.* at 7.  But Defendants do not identify any specific

3  documents that Plaintiffs may use for this purpose, nor point to any written policy of

4  accepting those documents as sufficient proof of authorized presence.  Indeed, when

5  asked during oral argument where a person could go to learn of this policy and how to

6  comply with it, defense counsel was unaware of any place where it has been publicized.

7  Defendants provide no evidence of a public policy of recognizing the authorized presence

8  of individuals with EADs coded (c)(14) or (a)(11) and providing them with Arizona

9  driver's licenses.[4]

10   While both sides agree that Plaintiff Gonzalez was able to obtain a driver's license

11  in 2015, that is not sufficient to establish that Plaintiffs are eligible for driver's licenses

12  under Defendants' policy.  Doc. 25, ¶ 10; Doc. 37 at 3.  Plaintiff Gonzalez obtained his

13  license only after his attorney contacted Defendants after Gonzalez was denied a license

14  when he presented his EAD.  Doc. 25, ¶ 10.  In addition, when Gonzalez attempted to

15  renew his driver's license on February 19, 2016, as he must do every year, he was again

16  denied on the basis of his EAD.  *Id.*

17   In short, Plaintiffs have alleged that ADOT's policy denies them licenses, and

18  Defendants have not shown a public policy to the contrary.  As noted above, Plaintiffs

19  may avoid dismissal of their complaint by providing facts which plausibly suggest they

20  have standing.  *Barnum Timber Co.*, 633 F.3d at 894.  Plaintiffs have done so here even if

21  the Court looks to their inability to obtain licenses as the relevant injury.

22   Defendants state that they have invited Plaintiffs to make appointments with

23  ADOT and obtain driver's licenses.  This invitation could be viewed as an attempt to

---

25  [4] The Deposition cited by Defendants does not show that Plaintiffs are able to obtain

26  driver's licenses under the ADOT policy.  The Deposition testimony simply asserts that
    ADOT's policy since 2013 has been to grant driver's licenses to individuals who satisfy

27  any of the three criteria identified by Director Halikowski and discussed above.
    Deposition at 68.  That policy says nothing about derivative status under VAWA or

28  pending U-visa applications.  And Plaintiffs dispute the existence of the policy,
    contending that Defendants actually deny licenses to individuals with EADs coded
    (c)(14) and (a)(11).  Doc. 47 at 10.

amend their policy, but "voluntary cessation of challenged conduct does not ordinarily render a case moot because a dismissal for mootness would permit a resumption of the challenged conduct as soon as the case is dismissed." *Bell v. City of Boise*, 709 F.3d 890, 898 (9th Cir. 2013) (quoting *Knox v. Serv. Employees Int'l Union, Local 1000*, 132 S. Ct. 2277, 2287 (2012)); *Friends of the Earth*, 528 U.S. at 189 ("It is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice.") (quotation marks omitted).  As the Supreme Court has made clear, Defendants have the "heavy burden of persuading the court that the challenged conduct cannot reasonably be expected to start up again." *Friends of the Earth, Inc.*, 528 U.S. at 189 (quotation marks and brackets omitted). Defendants have provided no indication that they will formally amend their written MVD Policy 16.1.4, nor have they identified any systematic change in their method of determining authorized presence for those seeking Arizona driver's licenses. Defendants' willingness to provide licenses to the named Plaintiffs does not change their policy of denying licenses to individuals with EADs coded (c)(14) or (a)(11).

Additionally, the Ninth Circuit has made clear that a defendant's offer to fully satisfy the claims of named plaintiffs will not moot a class action or prevent the plaintiffs from seeking class certification.  *Chen v. Allstate Ins. Co.*, 819 F.3d 1136, 1142 (9th Cir. 2016).  "To the extent that defendants may avoid a class action by picking off the named plaintiffs, the class claims are inherently transitory and evade review, making an exception to the mootness rule appropriate."  *Id.* at 1143 (quoting 5 James Wm. Moore, *Moore's Federal Practice* § 23.64[1][b] (3d ed. 2016)) (quotation marks omitted).

In summary, the Court concludes that Plaintiffs' inability to obtain driver's licenses based on their EADs stems directly from Defendants' policy of refusing to recognize the authorized presence of individuals who present EADs coded (c)(14) or (a)(11).  This injury would be redressed by an injunction ordering Defendants to stop enforcing their policy.  Plaintiffs thus have alleged sufficient facts to show standing, and

1  the Court will not dismiss their claims for lack of subject matter jurisdiction.[5]

2  **B.    Sovereign Immunity.**

3  "The Eleventh Amendment erects a general bar against federal lawsuits brought

4  against a state." *Porter v. Jones*, 319 F.3d 483, 491 (9th Cir. 2003). This bar generally

5  applies to suits again state officials. *Mason v. Arizona*, 260 F. Supp. 2d 807, 817 (D.

6  Ariz. 2003) (citing *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 101-2

7  (1984)). The Supreme Court held in *Ex parte Young* that state officials can, in some

8  circumstances, be sued to enjoin violations of federal law. This exception to sovereign

9  immunity applies when lawsuits are brought against state officers in their official

10 capacities for an injunction prohibiting future violations of federal law. Such "official-

11 capacity actions for prospective relief are not treated as actions against the State" for

12 purposes of the Eleventh Amendment. *Will v. Michigan Dept. of State Police*, 491 U.S.

13 58, 71 n.10 (1989) (internal quotation marks omitted). This is because "state officers

14 have no authority to violate the Constitution and laws of the United States," and an

15 injunction against such violations therefore does not infringe any legitimate state power.

16 Erwin Chemerinsky, *Federal Jurisdiction*, § 7.5 (6th ed. 2012).

17 For the *Ex parte Young* exception to apply, the state officer "must have some

18 connection with the enforcement of the act" to be enjoined. 209 U.S. at 157. The

19 connection "must be fairly direct; a generalized duty to enforce state law or general

20 supervisory power over the persons responsible for enforcing the challenged provision

21 will not subject an official to suit." *Coal. to Defend Affirmative Action v. Brown*, 674

22 F.3d 1128, 1134 (9th Cir. 2012) (quoting *L.A. Cty. Bar Ass'n v. Eu*, 979 F.2d 697, 704

23 (9th Cir. 1992)); *Sweat v. Hull*, 200 F. Supp. 2d 1162, 1167 (D. Ariz. 2001).

24 Defendants argue that the claims against Governor Ducey in this case are barred

---

26 [5] To be sure, there is a factual dispute between the parties concerning the availability of
27 driver's licenses, but the Court concludes that it should not convene an evidentiary
hearing to resolve that issue now. The content and scope of Defendants' policy is so
inextricably intertwined with the merits of Plaintiffs' claim that "the jurisdictional
28 determination should await a determination of the relevant facts on either a motion going
to the merits or at trial." *Augustine*, 704 F.2d at 1077.

by sovereign immunity and must be dismissed.  They emphasize that Governor Ducey did not issue Executive Order 2012-06 and contend that his failure to rescind the order is not sufficient to establish a connection between him and ADOT's policy.  Doc. 37 at 14. Plaintiffs, however, have brought suit against Governor Ducey in his official capacity, rendering irrelevant whether he or one of his predecessors issued the Executive Order.

Defendants also argue that the "Executive Order did not order Director Halikowski to change the driver's license policy or otherwise deny Plaintiffs any benefits, and Director Halikowski had already initiated his review of ADOT's policies prior to the Executive Order."  Doc. 52 at 10.  As a result, Defendants argue, rescinding the Executive Order will have no impact on ADOT's policy.  *Id.*

Plaintiffs conceded during oral argument that Executive Order 2012-06 does not control ADOT's policy relating to individuals with EADs coded (a)(11) – recipients of deferred enforced departure.  They maintain, however, that the Executive Order controls ADOT's policy concerning individuals with EADs coded (c)(14) – recipients of deferred action.  *See also* Doc. 47 at 17.

Arizona courts have made clear that a Governor's order is binding on lower executive branch officials.  *See Yes on Prop 200 v. Napolitano*, 160 P.3d 1216, 1225 (Ariz. Ct. App. 2007); *State v. Hooker*, 626 P.2d 1111, 1113 (Ariz. Ct. App. 1981).  As a result, the issue here is whether Executive Order 2012-06 requires ADOT and Director Halikowski to maintain a policy that rejects EADs coded (c)(14) as sufficient proof of federally authorized presence.  If it does, the Executive Order and Governor Ducey clearly have a direct connection to the challenged ADOT policy.

The Ninth Circuit has found that Executive Order 2012-06 was a "clear response to DACA."  *Dream Act IV*, 818 F.3d at 906.  The text of the Executive Order, however, refers more broadly to deferred action recipients.  It concludes that "the Deferred Action program does not and cannot confer lawful or authorized status or presence upon the unlawful alien applicants[,]" and directs state agencies to "initiate operational, policy, rule and statutory changes necessary" to give effect to this conclusion.  Doc. 30-3 at 2.

Plaintiffs argue that both this Court and the Ninth Circuit have already found the 2013 change to MVD Policy 16.1.4 to be a direct result of Executive Order 2012-06.  Doc. 47 at 17.  While the Court agrees that Defendants began a policy of denying licenses to DACA recipients in response to the Executive Order, it is less clear that the 2013 amendment to MVD Policy 16.1.4 was undertaken to comply with the Executive Order. This amended policy explicitly identified EADs coded (c)(14) and (a)(11) as insufficient to demonstrate authorized presence.  It was implemented after the initiation of the *Dream Act* litigation, and testimony from Director Halikowski indicates it was done to remedy inconsistencies in ADOT's treatment of EAD holders.  *Dream Act III*, 81 F. Supp. 3d at 801.

In short, a factual issue remains as to whether the 2013 amendment was undertaken as a litigation strategy in the *Dream Act* case, as a general effort to remedy inconsistencies in ADOT policy, or in compliance with Executive Order 2012-06.  At this stage, the record is insufficient for the Court to find that Governor Ducey and Executive Order 2012-06 do not have a direct connection to the challenged ADOT policy.  The Court will deny the motion to dismiss on this issue, but Defendants are not foreclosed from offering additional evidence on this issue in a motion for summary judgment or at trial.

### III.    Motion for Preliminary Injunction.

Defendants ask the Court to allow them an opportunity to conduct discovery before ruling on Plaintiffs' motion for preliminary injunction.  Doc. 40 at 17. Specifically, Defendants assert that they would like to depose Plaintiffs and conduct written discovery to evaluate Plaintiffs' alleged harm.  *Id.*  Plaintiffs filed their amended complaint on October 5, 2016 and their motion for preliminary injunction nine days later, leaving Defendants no opportunity for discovery relevant to the motion.  The Court finds the current record insufficient to make a fair determination of whether a preliminary injunction is warranted.  The Court has already granted the parties a period of discovery before it will consider class certification.  Because Plaintiffs seek a preliminary

injunction granting class-wide relief, the Court will deny Plaintiffs' motion for a preliminary injunction and direct the parties to conduct discovery before filing renewed motions for class certification and a preliminary injunction.

**IT IS ORDERED:**

1.    Plaintiffs' motion for preliminary injunction (Doc. 30) is **denied**.

2.    Defendants' motion to dismiss or for judgment on the pleadings (Doc. 37) is **denied.**

3.    The Court will enter a separate case management order.

Dated this 26th day of January, 2017.

_____
David G. Campbell
United States District Judge