**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Lucrecia Rivas Valenzuela, et al., | No. CV-16-03072-PHX-DGC |
| Plaintiffs, | **ORDER** |
| v. | |
| Doug Ducey, et al., | |
| Defendants. | |

Plaintiffs have filed a motion to certify a class of noncitizens who possess certain categories of federally-issued Employment Authorization Documents, but nonetheless are denied Arizona driver's licenses or required to present additional documents to obtain them. Doc. 125. The motion is fully briefed, and the Court heard oral argument on December 1, 2017. Docs. 140, 141. For reasons stated below, the Court will grant the motion in part.

**I.   Background.**

Arizona law states that noncitizens may obtain Arizona driver's licenses by presenting proof that their presence in the United States is "authorized under federal law." A.R.S. § 28-3153(D). Plaintiffs are noncitizen residents of Arizona who have deferred action designations from the federal government – meaning that they presently are not subject to removal from the United States – and who have been issued Employment Authorization Documents ("EADs") from the U.S. Citizenship and

Immigration Services ("USCIS").  Plaintiffs' EADs are coded "(c)(14)" and authorize them to work in the United States.

Defendants' current policy requires (c)(14) EAD holders to satisfy procedural requirements that other EAD holders need not satisfy to obtain an Arizona driver's license.  Plaintiffs assert that this policy violates the Supremacy and Equal Protection Clauses of the U.S. Constitution.  Doc. 1.  Plaintiffs seek to represent a class of (c)(14) holders in Arizona.  Plaintiffs also seek to represent holders of (a)(11) EADs who are prohibited entirely from obtaining Arizona driver's licenses.

When Plaintiffs filed this case in September 2016, Defendants' Policy 16.1.4 stated that EADs coded (a)(11), (c)(14), or (c)(33) were insufficient to prove federally authorized presence in the United States, while all other categories of EADs were sufficient.  *See* Doc. 27-4 at 5.[1]  This Court and the Ninth Circuit prohibited Defendants from enforcing the policy with respect to noncitizens possessing (c)(33) EADs pursuant to the Deferred Action for Childhood Arrivals ("DACA") program.  *See Ariz. Dream Act Coal. v. Brewer*, 81 F. Supp. 3d 795, 799 (D. Ariz. 2015), *aff'd* 855 F.3d 963 (9th Cir. 2017).  Plaintiffs in this case seek similar declaratory and injunctive relief prohibiting Defendants from enforcing their policy with respect to (c)(14) and (a)(11) EADs.  Doc. 125 at 6.

The relevant version of Policy 16.1.4 was issued in 2013 and remained unchanged for several years.  *See* Docs. 27-4, 125-12.  In February 2017, in response to questions from this Court at oral argument on another motion in this case, Defendants issued a revised version of the policy.  Doc. 125-13 at 17; Doc. 125-12.  The 2017 version, like the 2013 version, contains section "S," which addresses certain categories of EADs.  Doc. 125-12 at 5; Doc. 27-4 at 5.  Consistent with the rulings in the *Dream Act* case, the 2017 version eliminates any reference to (c)(33) EADs.  The policy continues to provide, however, that (a)(11) EADs are unacceptable as proof of authorized presence, and states

---

[1] Citations are to page numbers attached to the top of pages by the Court's ECF system, not to original numbers at the bottom of pages.

- 2 -

that (c)(14) EAD holders "may be eligible" for a driver's license or other identification if they are a derivative of a self-petitioner under the Violence Against Women Act ("VAWA") or have an application pending for a visa or change of status. Doc. 125-12 at 5. To prove that they fall into one of these categories, (c)(14) EAD holders must present an acceptable document in addition to his or her EAD, which "may include" a USCIS Notice of Action identifying the EAD holder as a VAWA derivative or an I-918 petition for a U nonimmigrant visa. *Id.* Defendants' website adds that "there may be alternative forms of documentation sufficient to establish authorized presence when accompanied with a C14 [EAD]." Doc. 125-15.[2]

## II.     Plaintiffs' Proposed Class.

Plaintiffs seek to certify the following class under Federal Rule of Civil Procedure 23(b)(2):

> All noncitizens who are being denied or will be denied the ability to present their [EADs] as sufficient proof of federally authorized presence to obtain an Arizona driver's license as a result of Defendants' 2013 and 2017 policies and related practices pursuant to Executive Order 2012-06, . . . Policy 16.1.4, and . . . Policy 16.1.4's implementation.

Doc. 125 at 6. Because the only classes of EAD holders who are denied the right to obtain driver's licenses solely on the basis of their EADs are (a)(11) and (c)(14) holders, those are the two categories that would be included in this proposed class.

For several reasons, Plaintiffs cannot include (a)(11) EAD holders in their proposed class. First, no Plaintiff holds an (a)(11) EAD. As a result, no Plaintiff has been injured by Defendants' (a)(11) policy and no Plaintiff has standing to challenge that policy. Second, no Plaintiff has a claim typical of an (a)(11) EAD holder's claim. The gravamen of Plaintiffs' complaint is that Defendants are imposing burdens on (c)(14) EAD holders in the form of additional paperwork not required of other EAD holders.

---

[2] Defendants dispute that the changes to Policy 16.1.4 and the website constitute a change in policy. Doc. 125-13 at 17. They characterize the additions as "guidance" to further inform the public of their existing policies. *Id.*

- 3 -

This is quite different from the complaint of (a)(11) EAD holders who are barred entirely from obtaining licenses. Third, no Plaintiff can adequately represent (a)(11) EAD holders because no Plaintiff can present an (a)(11) claim at trial. For these reasons, the Court concludes that (a)(11) EAD holders cannot be included in the class, and will focus the rest of this order on (c)(14) EAD holders.

**III.  Standing.**

In arguing that Plaintiffs are not adequate class representatives, Defendants assert that Plaintiffs lack standing to pursue their claims. Doc. 140 at 13-14. Defendants argue that Plaintiffs, as (c)(14) holders under the VAWA and U visa programs, have obtained or can obtain driver's licenses under the Arizona policy. Although true, the Court is not persuaded that this fact deprives Plaintiffs of standing.

The Supreme Court has recognized that equal protection is denied not only when government denies a benefit to a particular class, but also when government imposes a barrier to obtaining the benefit that is not imposed on others:

> When the government erects a barrier that makes it more difficult for members of one group to obtain a benefit than it is for members of another group, a member of the former group seeking to challenge the barrier need not allege that he would have obtained the benefit but for the barrier in order to establish standing. The "injury in fact" in an equal protection case of this variety is the denial of equal treatment resulting from the imposition of the barrier, not the ultimate inability to obtain the benefit.

*Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville, Fla.*, 508 U.S. 656, 666 (1993). Even if noncitizens with (c)(14) EADs ultimately succeed in obtaining driver's licenses, Defendants' policy subjects them to requirements not applied to other EAD holders. Plaintiffs are treated differently from other EAD holders who can simply present their EADs as sufficient proof of authorized presence. This is an "injury in fact" as explained in the above quotation.[3]

---

[3] Because the parties have not addressed whether this type of injury might be limited to cases involving the allocation of finite government benefits among competing persons or entities, or whether this reasoning might be subject to an exception for *de minimis* barriers, the Court will not address those issues now. If later arguments persuade

- 4 -

Nor is standing defeated by the fact that some Plaintiffs have obtained licenses. Defendants agreed at oral argument that (c)(14) EAD holders must renew their driver's licenses every year or two. Thus, Plaintiffs who presently have licenses will be required to comply with Defendants' policy when they seek to renew those licenses.

What is more, "[i]n a class action, standing is satisfied if at least one named plaintiff meets the requirements." *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007) (citing *Armstrong v. Davis*, 275 F.3d 849, 860 (9th Cir.2001)). Plaintiff Araceli Franco Gonzalez received a (c)(14) EAD in August 2017 based on her pending application for a U visa. Doc. 125-23 ¶ 2. The next month, Ms. Franco Gonzalez went to an Arizona motor vehicle division ("MVD") office to obtain a driver's license. *Id.* ¶ 3. She presented her EAD and social security card, but was told that she would need additional documentation. *Id.* Ms. Franco Gonzalez contacted her attorney, asking what additional documents she needed. *Id.* ¶ 4. Her attorney e-mailed her a copy of her U-visa deferred action approval letter. *Id.* She returned to the MVD, but again was denied because she did not have the original letter. *Id.*

Ms. Franco Gonzalez suffered a concrete, particularized harm when she encountered a barrier to obtaining a driver's license that is not faced by other EAD holders. This injury resulted directly from Defendants' policy and would be redressed by an injunction requiring Arizona to accept EADs as sufficient proof of authorized presence in the United States. And similar injury is likely to recur in the future – Ms. Franco Gonzalez will continue to hold a (c)(14) EAD during the pendency of her visa application and will encounter Defendants' policy when she returns to the MVD to obtain her license and each time she renews her license.

---

the Court that the barrier of Defendants' current policy is not sufficient for standing, the Court can decertify the class. The parties do dispute whether having to present additional documents forces (c)(14) EAD holders to disclose sensitive personal information. *See* Doc. 125 at 10; Doc. 140 at 11. For purpose of standing under *Northeastern*, however, it is not the discomfort of being required to disclose sensitive personal information that makes up the injury (although that fact may make the injury worse), but the imposition of a procedural hurdle that other EAD holders are not required to clear. 508 U.S. at 666.

Standing must be established "on a claim-by-claim basis." *Valley Outdoor, Inc. v. City of Riverside*, 446 F.3d 948, 952 (9th Cir. 2006). The parties do not address standing separately for Plaintiffs' Supremacy Clause claim, but the Court finds that it is satisfied. Plaintiffs claim injury from the very policy they assert is preempted by federal law. If Plaintiffs are correct, the policy will be invalidated and Plaintiffs' injury will be redressed.

**IV.   Rule 23 Requirements.**

Under Rule 23(a), a district court may certify a class only if (1) it is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims of the representative parties are typical of the claims of the class, and (4) the representatives will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a)(1)-(4). The Court must also find that one of the requirements of Rule 23(b) has been met. Plaintiffs seek class certification under Rule 23(b)(2). Doc. 125. That rule permits certification if "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Fed. R. Civ. P. 23(b)(2).

Plaintiffs bear the burden of showing that these requirements have been met. *Conn. Ret. Plans & Trust Funds v. Amgen Inc.*, 660 F.3d 1170, 1175 (9th Cir. 2011). At least four circuits have held that Plaintiffs must carry this burden by a preponderance of the evidence. *See Reyes v. Netdeposit, LLC*, 802 F.3d 469, 484 (3d Cir. 2015); *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 811 (7th Cir. 2012); *Novella v. Westchester Cty.*, 661 F.3d 128, 148-49 (2d Cir. 2011); *Alaska Elec. Pension Fund v. Flowserve Corp.*, 572 F.3d 221 (5th Cir. 2009). This standard appears to be the trend in federal courts, *Newberg on Class Actions*, § 7:21 (2016) ("*Newberg*"), and will be applied in this case. *See Smilovits v. First Solar, Inc.*, 295 F.R.D. 423, 427 (D. Ariz. 2013). The Court must rigorously analyze the proposed class to ensure it comports with Rule 23. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011) ("*Dukes*").

**A.     Rule 23(a).**

**1.     Numerosity.**

A proposed class satisfies the numerosity requirement if members are so numerous that joinder would be impracticable. Fed. R. Civ. P. 23(a)(1). There is no fixed threshold, *General Tel. Co. of the NW, Inc. v. EEOC*, 446 U.S. 318, 330 (1980), but courts in this circuit generally have held that classes of 40 or more satisfy the numerosity requirement. *See, e.g., Garrison v. Asotin Cty.*, 251 F.R.D. 566, 569 (E.D. Wash. 2008); *Wamboldt v. Safety-Kleen Sys., Inc.*, No. C 07-0884 PJH, 2007 WL 2409200, at *11 (N.D. Cal. Aug. 21, 2007). Furthermore, "[w]hile the number of class members is the most important factor, the ultimate question concerns the practicability of their joinder." S. Gensler, Federal Rules of Civil Procedure, Rules and Commentary at 540 (2017).

Plaintiffs rely on two sources of data to establish numerosity. First, Plaintiffs' counsel contacted the office of Congressman Ruben Gallego, which obtained data from USCIS. Doc. 125 at 16 n.3; Doc. 125-20 ¶¶ 3-5. That data show that in 2015 there were 414 persons in Arizona holding (c)(14) EADs; in 2016 (through November 8) there were 240 persons; and USCIS issued a total of 1,327 (c)(14) EADs to persons in Arizona between January 1, 2011 and November 8, 2016. Doc. 125-20 at 8. Plaintiffs assert that the "overwhelming majority" of these EAD holders will need driver's licenses due to "the necessity of driving in Arizona." Doc. 125 at 16; *see Ariz. Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1062 (9th Cir. 2014) ("As a practical matter, the ability to drive may be a virtual necessity for people who want to work in Arizona."). Plaintiffs assert that the reasonable inference to be drawn from this data is that the class numbers in the hundreds. Doc. 125 at 16.

Second, Defendants produced MVD records during discovery which show that at least 43 people in addition to Plaintiffs presented (c)(14) EADs to obtain licenses between February and October of this year. Doc. 141 at 7; Doc. 141-3. Plaintiffs argue that this figure is understated due to Defendants' own recordkeeping practices – MVD personnel are not required to note the category of EAD that a person presents. Doc. 141-

2 at 3-4. Thus, for example, Plaintiff Marcos Gonzalez holds a (c)(14) EAD, but Defendants' record concerning him includes no indication of his EAD category. Doc. 141 at 7 n.2. Nor do Defendants' records account for persons turned away at MVD greeter stations, like Plaintiff Franco Gonzalez. Doc. 141-2 at 5-8; Doc. 141 at 7. Finally, Plaintiffs argue that the number is understated because Defendants' updated policy was only reduced to writing in February 2017, and (c)(14) holders may not yet be aware they are eligible. Doc. 141 at 7.

The Court finds numerosity satisfied. Defendants' evidentiary objections with respect to the USCIS data are not persuasive. Plaintiffs have produced enough information to satisfy the authentication requirement of Federal Rule of Evidence 901(a) – evidence sufficient to support a finding that the item is what Plaintiffs claim. *See* Docs. 125-20, 147-1. And although the data charts might be subject to a hearsay objection, Defendants do not claim the charts are fabricated or inaccurate, and the charts appear to contain government collected and maintained data subject to judicial notice. Fed. R. Ev. 201(a)(2). Further, many cases hold that the rules of evidence are not applied strictly at the class certification stage. *See*, *e.g.*, *Paxton v. Union Nat'l Bank*, 688 F.2d 552, 562 n. 14 (8th Cir. 1982); *Longest v. Green Tree Servicing LLC*, 308 F.R.D. 310, 317-18 n.2 (C.D. Cal. 2015); *Keilholtz v. Lennox Hearth Prods. Inc.*, 268 F.R.D. 330, 337 n.3 (N.D. Cal. 2010); *Parkinson v. Hyundai Motor Am.*, 258 F.R.D. 580, 599 (C.D. Cal. 2008).[4] In addition, Defendants' own records show a class of more than 40 members. Docs. 141-1 through 141-7.

Nor can the Court conclude that the figures presented by Plaintiffs are mere speculation as Defendants suggest. There appears to be nothing speculative about the data produced by Defendants. And although the USCIS data charts concern (c)(14) holders in Arizona and not (c)(14) applicants to MVD, they provide a reasonable basis

---

[4] Judge Browning, in his typically thoughtful fashion, has questioned this conclusion. *See Zuniga v. Bernalillo Cty.*, 319 F.R.D. 640, 659 n.5 (D. N.M. 2016). The Court need not wrestle with this issue, however, in light of the MVD evidence of numerosity.

for inferring that the class is numerous. *See*, *e.g.*, *Hoffman v. Blattner Energy, Inc.*, 315 F.R.D. 324, 337 (C.D. Cal. 2016) (finding numerosity satisfied where plaintiff identified 23 employees who were actual members of the subclass and presented evidence that there were 1,229 total employees because "it is reasonable for the Court to conclude that there are other employees out of 1,229 who fall within the proposed subclass") (citing *Newberg*, § 3:3 ("Where the exact size of the class is unknown but general knowledge and common sense indicate that it is large, the numerosity requirement is satisfied.")). This is particularly true in light of the fact that the one entity that could have reliable information on this issue – the State – has not collected it.[5]

Plaintiffs have also shown that joinder of all class members is impracticable. Plaintiffs note that the class is made up of immigrants who live throughout the state of Arizona. Doc. 125 at 17. And many class members are, as shown by their EAD classification, victims of domestic violence or other crimes who would be reluctant to join a lawsuit that might publicize their circumstances. *Id.* (citing *Jordan*, 669 F.2d at 1319 ("[O]ther factors such as the geographical diversity of class members, the ability of individual claimants to institute separate suits, and whether injunctive or declaratory relief is sought, should be considered in determining impracticability of joinder.")).

### 2. Commonality.

Commonality exists if "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Plaintiffs' "claims must depend upon a common contention[.]" *Dukes*, 564 U.S. at 350. In a civil rights suit such as this one, "commonality is satisfied where the lawsuit challenges a system-wide practice or policy that affects all of the putative class members." *Ortega-Melendres v. Arpaio*, 836 F. Supp. 2d 959, 989 (D. Ariz. 2011), *aff'd sub nom. Melendres v. Arpaio*, 695 F.3d 990 (9th Cir. 2012).

---

[5] Some courts have found that a relaxed numerosity showing is appropriate where plaintiffs seek only injunctive or declaratory relief. *See*, *e.g.*, *Goodnight v. Shalala*, 837 F. Supp. 1564, 1582 (D. Utah 1993) (citing *Horn v. Associated Wholesale Grocers, Inc.*, 555 F.2d 270, 275-76 (10th Cir. 1977)). The Court need not rely on these cases because Plaintiffs have met their burden even without relaxing the numerosity requirement.

1 Plaintiffs identify two common legal issues: whether Defendants' policies and practices violate the Supremacy Clause, and whether they violate the Equal Protection Clause. Doc. 125 at 19. Plaintiffs also assert that they all share the same injury: they are subjected to or will be subjected to hurdles in obtaining driver's licenses that other EAD holders do not face. Doc. 141 at 10.

Defendants highlight factual differences among the class members and assert that "there are no questions common to the entire class." Doc. 140 at 1. Defendants note that some of the named Plaintiffs have obtained driver's licenses, suggest that the same must be true of some class members, and argue that these individuals do not face the same constitutional injury as Plaintiffs assert in this case. But as noted above, the relevant injury is not the denial of driver's licenses, but the fact that the State imposes requirements on class members that it does not impose on other EAD holders. *Ne. Fla. Chapter*, 508 U.S. at 666.

Defendants argue that Plaintiffs' proposed class includes all EAD holders, including those that can readily obtain driver's licenses, and thus includes class members who are not injured by Defendants' policies. *Id.* at 9. It does not. The proposed class is limited to noncitizen EAD holders who are denied the opportunity to present their EADs as sufficient proof of authorized presence – i.e., holders of (c)(14) EADs. Doc. 125 at 6.

To satisfy Rule 23(a)(2), Plaintiffs need not show that common issues will predominate. A single common question will do. *Dukes*, 564 U.S. at 359. Plaintiffs have shown that all class members are subject to the same allegedly unconstitutional policy. And despite factual variations in class members' immigration status and experiences at the MVD, each class member's claim centers on the same legal issue: whether Defendants' policy of treating them differently than other EAD holders is lawful. Class-wide resolution of this issue would resolve the central issue in every class member's claim. Commonality is satisfied.

/ / /

/ / /

### 3. Typicality.

Typicality exists if "the claims or defenses of the representative parties are typical of the claims and defenses of the class." Fed. R. Civ. P. 23(a)(3). "The test of typicality 'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 984 (9th Cir. 2011) (quoting *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)).

Defendants make a number of arguments as to why typicality is not satisfied. Doc. 140 at 10-13. Many of these arguments, while perhaps relevant to the merits of Plaintiffs' claims, are irrelevant to the typicality inquiry. Defendants make two relevant arguments. First, they assert that Plaintiffs are not members of the class. Doc. 140 at 12-13. Second, they argue that certain Plaintiffs do not possess the same interests as the class due to their unique circumstances. *Id.* at 11-12.

The five Plaintiffs are Lucrecia Rivas Valenzuela, Marcos Gonzalez, Maria Isabel Aceituno Lopez, Araceli Franco Gonzalez, and Maria Del Carmen Palafox Marquez. Each has lived in Arizona for over ten years. Doc. 125 at 11-12.

Ms. Rivas Valenzuela had a (c)(14) EAD when this case was filed, but she subsequently was granted a U visa and an (a)(19) EAD. *Id.*; Doc. 142 ¶¶ 5, 18. She is not typical of the class. As the holder of an EAD coded (a)(19), she no longer is being denied, nor will she be denied in the future, the ability to present her EAD alone as proof of authorized presence.

Ms. Palafox Marquez has never attempted to obtain a license because she does not have a Social Security card. Doc. 125-24 ¶ 6. She explained in her declaration that she plans to apply for a license as soon as she receives a card, but until then she has no claim and cannot be characterized as typical of the class.

Defendants have not identified any meaningful characteristics of the remaining three Plaintiffs that render their injuries or claims unique from those of the class. There

are some differences. For example, two currently hold licenses, while one does not; two have pending U visa applications, while one is a VAWA derivative; one has been treated inconsistently by the MVD at different times during the past 15 years; one was able to obtain a license by presenting her EAD and deferred action approval letter; and one was denied a license when she presented her EAD and an electronic copy of her deferred action approval letter. *See* Docs. 125-21, 125-22, 125-23. But these differences do not defeat the typicality of their claims. All three Plaintiffs at some point were told by an MVD employee that their EAD alone was insufficient, and all continue to hold (c)(14) EADs which they plan to renew until their status changes at some future date. Defendants make much of the fact that some Plaintiffs have obtained licenses. Doc. 140 at 12. But as Defendants admitted at oral argument, a license issued on the basis of an EAD expires when the EAD expires. Thus, each of these Plaintiffs will be required to obtain new licenses. The glue that holds them together is that all class members are subject to the same allegedly unlawful policy that imposes additional obstacles to obtaining licenses. Typicality is satisfied as to Plaintiffs Marcos Gonzalez, Maria Isabel Aceituno Lopez, and Araceli Franco Gonzalez.

### 4. Adequacy of Representation.

The adequacy requirement is satisfied if the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a)(4). The Supreme Court has explained that this requirement "tends to merge" with the commonality and typicality criteria of Rule 23(a), which "serve as guideposts for determining whether maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 626 n.20 (1997) (citing *Gen. Tel. Co. of Sw.*, 457 U.S. at 157, n.13) (brackets, quotation marks, and ellipses omitted).

For many of the same reasons that the Court finds commonality and typicality satisfied, the Court also finds that Mr. Gonzalez, Ms. Aceituno Lopez, and Ms. Franco

Gonzalez are adequate class representatives. Their interests are aligned with the class interests as they share the same type of injury caused by the same policy. The Court is also satisfied that Plaintiffs' counsel are experienced and will continue to vigorously prosecute this case.

Defendants' adequacy arguments largely repeat their arguments regarding the other three prerequisites, and fail for the same reasons. Defendants make one new argument. They suggest that Plaintiffs are inadequate representatives because there is a conflict of interest between the named Plaintiffs who hold (c)(14) EADs under the U visa or VAWA programs and (c)(14) EAD holders under other programs. As noted below, however, the parties have failed clearly to identify these other EAD programs. The Court does not find their possible existence to be a basis for denying class certification.

### B. Rule 23(b)(2).

Rule 23(b)(2) applies when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). The Supreme Court has explained:

> The key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted – the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them. In other words, Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class. It does not authorize class certification when each individual class member would be entitled to a different injunction or declaratory judgment against the defendant.

*Dukes*, 564 U.S. at 360-61 (quotation marks and citations omitted). Plaintiffs allege that Defendants' official policy of rejecting their EADs and accepting all others violates the Constitution. A declaration to that effect or an injunction against enforcement of the policy would provide relief to every member of the class. The relief would not be tailored to individual class members; the policy is unconstitutional as to all or none.

- 13 -

Defendants argue that the injunction sought by Plaintiffs would be no more than a general directive to follow the law. Doc. 140 at 16-17 (citing *Civil Rights Educ. & Enf't Ctr. v. Hosp. Props. Tr.*, 317 F.R.D. 91, 105 (N.D. Cal. 2016), *aff'd*, 867 F.3d 1093 (9th Cir. 2017)). The Court does not agree. Plaintiffs have identified a specific policy that allegedly violates the Constitution. The relief they seek would declare that policy unlawful and prohibit its enforcement against the class. It would not vaguely order Defendants to follow the law.

## V.     Scope of Class.

As noted above, (a)(11) EAD holders cannot be included in the class because there is no Plaintiff with an (a)(11) claim. At oral argument, the parties also suggested that there are categories of (c)(14) EAD holders that are entirely barred from obtaining licenses, but counsel were unable to provide any specifics. As Plaintiffs have satisfied Rule 23 and Defendants have not provided information that could be used to exclude some (c)(14) holders from the class, the Court will include all of them at this stage. If the parties provide more information on this issue during summary judgment briefing, the Court will have the ability to modify the class definition if warranted.

**IT IS ORDERED:**

1.     Plaintiffs' motion for class certification (Doc. 125) is **granted in part**.

2.     The Court certifies the following class under Rule 23(b)(2):

All noncitizens holding Employment Authorization Documents (EADs) coded (c)(14) who are being denied or will be denied the ability to present their EADs alone as sufficient proof of federally authorized presence in order to obtain an Arizona driver's license, as a result of Defendants' 2013 and 2017 policies and related practices pursuant to Executive Order 2012-06, Arizona Department of Transportation (ADOT) Policy 16.1.4, and ADOT Policy 16.1.4's implementation.

Dated this 6th day of December, 2017.

*David G. Campbell*
David G. Campbell
United States District Judge

- 14 -